STATE of Missouri,
Plaintiff–Respondent,

v.

Douglas INGLERIGHT,
Defendant–Appellant.

No. 16113.

Missouri Court of Appeals,
Southern District,
Division Two.

March 23, 1990.

Motion for Rehearing or to Transfer
Denied April 13, 1990.

Application to Transfer Denied
May 15, 1990.

S. Dean Price, Sp. Public Defender, James R. Schumacher, Asst. Public Defender, Springfield, for defendant appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff respondent.

FLANIGAN, Presiding Judge.

The trial court, after a nonjury trial, found defendant Douglas Ingleright guilty of the following three felonies: possession of lysergic acid diethylamide (LSD),

§ 195.020 [1] (Count I), possession of phenobarbital, § 195.240 (Count II), and possession of less than 35 grams of marijuana, § 195.020 (Count III). The court sentenced defendant to 10 years' imprisonment on Count I, 10 years' imprisonment on Count II, and 5 years' imprisonment on Count III, the sentences to run concurrently. Defendant appeals.

Defendant's first point is that the evidence is insufficient to support the conviction "in that there was insufficient evidence that defendant knowingly and intentionally possessed the controlled substances and that defendant was aware of the nature and presence of the controlled substances."

■ The findings of the trial court in a jury-waived criminal case have the force and effect of a verdict of a jury. Mo. Const. art. I, § 22(a); *State v. Northern,* 472 S.W.2d 409, 411[3] (Mo.1971). In determining the validity of defendant's point, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the finding of guilt, and reject contrary and contradictory evidence. *State v. Petrechko,* 486 S.W.2d 217, 218[1] (Mo. 1972). All evidence unfavorable to the state must be disregarded. *State v. Unverzagt,* 721 S.W.2d 786 (Mo.App.1986).

"To sustain a conviction for possession of a controlled substance under § 195.020, the state must prove that the defendant knowingly and intentionally possessed the proscribed substance. To meet this burden, conscious, intentional possession, either actual or constructive, must be established.... The state must also show that the defendant was aware of the presence and nature of the substances in question.... Both possession and knowledge may be proved by circumstantial evidence. If actual possession has not been shown, 'constructive possession will suffice when other facts buttress an inference of defendant's knowl-

---

1. All references to statutes are to RSMo 1986, V.A.M.S. Sections 195.020 and 195.240 were re-

pealed by L.1989, S.B. Nos. 215 & 58, § A.

edge of the presence of the controlled substance.' ... Exclusive control of the premises on which controlled substances are found raises an inference of possession and control of those substances." *State v. Barber*, 635 S.W.2d 342, 343 (Mo. 1982). (Authorities omitted). The *Barber* principles also apply to offenses under § 195.240. *State v. Robinson*, 664 S.W.2d 543, 546[6, 7] (Mo.App.1983).

Defendant was charged as a persistent offender, § 558.016, and the court found him to be one. One of his three prior convictions was a 1987 conviction for possession of marijuana.

Two highway patrolmen, Trooper Cooper and Trooper Shultz, figured in the apprehension of defendant on October 18, 1987, the date of the offenses.[2] The two uniformed troopers, each driving a marked patrol car, were patrolling different segments of Highway I-44. Trooper Shultz was in Webster County and Trooper Cooper was east of Shultz in Laclede County.

Trooper Shultz observed two vehicles traveling east in the eastbound portion of I-44 at a speed which he estimated at 100 miles per hour. The rear vehicle of the two speeding vehicles was a Buick operated by defendant and occupied solely by him.

Trooper Shultz crossed the median and chased the two speeders. Shultz caught up with the Buick and signalled to defendant to pull over to the right. Shultz testified that defendant was looking at Shultz when that signal was given. Shultz testified, "Since defendant had spotted me, I wanted to go ahead and stop the front vehicle, which I did." Shultz chased the first speeding vehicle at speeds up to 80 miles per hour. Shultz said, "As soon as the other one started slowing down and pulling over on the shoulder, the defendant pulled into the left-hand passing lane behind a truck and went right on by me."

Shultz had previously notified Trooper Cooper by radio of the description of the Buick and its license number. Cooper saw the Buick and crossed the median in pursuit of it. Defendant left I-44 on the ramp at Route C and pulled into the parking lot of a convenience store.

Cooper informed defendant that he was stopped for a speeding violation which occurred earlier in Webster County. Defendant told Cooper he knew he was speeding and said he was confused about whether Trooper Shultz wanted him to stop.

Defendant gave Cooper oral and written consent to search the Buick. Cooper found marijuana seeds on the carpeted floorboard near the base of the driver's seat. Under the driver's seat, Cooper found a plastic plate which had the odor of marijuana smoke. Defendant, who had been placed under arrest and given the Miranda warnings, told Cooper that the Buick belonged to his girl friend with whom he had lived for seven months.

During his search, Cooper found some syringes in the trunk which were about 12 inches from a bag containing defendant's clothing. Trooper Shultz arrived and participated in the search. In the middle of the front seat was a console, the lid of which served as an elbow rest for the driver. The lid was 12 inches long and 4 inches wide and was hinged. Beneath the lid was a black tray which was 12 inches long, 4 inches wide, and 4 inches deep. The tray "just drops in and slips right out." Underneath that tray, Trooper Shultz found LSD, phenobarbital, and marijuana. The state adduced expert testimony on the nature of each of the controlled substances.

■ For the reasons which follow, this court holds that the evidence is sufficient to support the conviction. In *State v. Ingleright*, 782 S.W.2d 147 (Mo.App.1990), mentioned in footnote 2, this court affirmed defendant's conviction for possession of drug paraphernalia which consisted of the syringes found in the locked trunk near defendant's clothing. That case, of course, arose out of a separate trial with its separate record, but that record contained substantially the same evidence as

---

**2.** Also arising out of the incident of October 18, 1987, was *State v. Douglas C. Ingleright*, 782 S.W.2d 147 (Mo.App.1990), in which this court, in a separate proceeding, affirmed defendant's conviction for possession of drug paraphernalia in violation of § 195.020.2.

the instant record. In *Ingleright,* this court found the following to be inculpatory circumstances supporting the conviction: (1) defendant was present in the car where the syringes were found; (2) defendant was alone in the car and had had exclusive control of it for some time; (3) defendant evaded the first attempt [by Trooper Shultz] to stop his vehicle; and (4) the syringes were found in the trunk with defendant's clothing, "thus permitting an inference that defendant knew the syringes were in the trunk."

Each of the foregoing factors is present here. It is true that the three controlled substances upon which the three counts of the instant information were based were found in the console and not in the trunk. They were, however, within reach of the driver. Ready access to the area in which the drugs are found may be an incriminating factor. *State v. West,* 559 S.W.2d 282, 284 (Mo.App.1977).

There was no showing with respect to the ownership of the Buick. Trooper Cooper quoted a hearsay statement of defendant to the effect that the Buick was owned by defendant's girl friend. Although defendant was the sole occupant of the Buick, there was no showing that he was the owner.

In *State v. Virdure,* 371 S.W.2d 196 (Mo. 1963), defendant was the *owner* and *sole possessor* of his automobile when marijuana was discovered in it by officers. The court held that from those facts, and the inferences to be deduced therefrom, the jury could reasonably find, as it did, "that defendant knew the narcotic drug was there upon and in his property." Id. at 201.

Some courts have held that the sole occupancy of a vehicle, although not by the owner, supports a finding of possession of contraband found in it. *Byars v. State,* 259 Ark. 158, 533 S.W.2d 175, 184[5] (1976); *Reed v. State,* 186 Ga.App. 539, 367 S.E.2d 809 (1988); *McGaskey v. State,* 451 S.W.2d 486 (Tex.Crim.App.1970); *State v. Potts,* 1 Wash.App. 614, 464 P.2d 742 (1969); *State v. Dodd,* 8 Wash.App. 269, 505 P.2d 830, 833[6, 7] (1973).

In *State v. Harrington,* 679 S.W.2d 906 (Mo.App.1984), defendant was the sole occupant of a vehicle owned by his father. This court held that a conviction for possession of marijuana was supported by the evidence of defendant's exclusive possession of the vehicle, coupled with evidence that he attempted to flee, had easy access to marijuana which was under the front seat, and had marijuana products on his person. The latter factor, said the court, "tends to confirm his possession and awareness of the original cache."

In *State v. Dusso,* 760 S.W.2d 546 (Mo. App.1988), defendant was the driver, and apparently the sole occupant, of a car which he did not own. Defendant's conviction for possessing cocaine, found concealed in the sleeve of a jacket underneath the driver's seat, was held to be supported by the evidence.

■ Another factor bearing on the issue of defendant's knowledge and intent with respect to the presence of the controlled substances in the console is his prior marijuana conviction.

> "Evidence of commission by defendant of crimes separate and distinct from the crime for which he is charged is generally inadmissible.... But such evidence is generally admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial.... Evidence of other crimes should be admitted under one of these exceptions only when the prejudicial effect of the evidence is outweighed by its probative value. This balancing of prejudicial effect and probative value lies within the sound discretion of the trial court."

*State v. Mallett,* 732 S.W.2d 527, 534[4, 5] (Mo. banc 1987). (Citing authorities.)

In *State v. Williams,* 539 S.W.2d 530, 534[4] (Mo.App.1976), defendant was charged with possessing heroin. Evidence

relating to the possession of a large quantity of marijuana was admissible to show that defendant's possession of the heroin was with full knowledge of its illegal character. In *State v. Tygart*, 531 S.W.2d 47 (Mo.App.1975), the court held that evidence of the separate crime of the sale of narcotics was relevant to the charge against the defendant of possessing narcotics and was admissible on the issues of knowledge and intent. Cases supporting the admissibility of the prior marijuana conviction and its materiality on the issue of defendant's knowledge and intent are *State v. Wing*, 455 S.W.2d 457, 464 (Mo.1970); *State v. Bagley*, 771 S.W.2d 93, 96–97[4, 5] (Mo. App.1989). See also *State v. Rose*, 727 S.W.2d 919, 921 (Mo.App.1987).

Federal authorities support the use of defendant's prior marijuana conviction as bearing upon the issues of his knowledge and intent with respect to the instant items of contraband. In *United States v. Kaufman*, 858 F.2d 994, 1005[22] (5th Cir.1988), defendant's prior conviction for drug possession was admissible to show his intent in a drug conspiracy for which he was currently being prosecuted. In *United States v. Rubio–Estrada*, 857 F.2d 845, 847[1] (1st Cir.1988), evidence of defendant's prior conviction for possessing cocaine was admissible to show his knowledge and intent with respect to drugs and drug paraphernalia found in his house. See also Federal Rule of Evidence 404(b).

Defendant's first point has no merit.

Defendant's second point is that the trial court erred in denying defendant's motion to dismiss "for lack of a speedy trial."

Defendant was arrested on October 18, 1987, and remained in custody until the trial, which was held on November 8, 1988. On October 19, 1987, the case was filed in the Circuit Court of Laclede County. A preliminary hearing was set, "at defendant's request," for January 27, 1988. The preliminary hearing was held on that date and the defendant was "bound over."

On April 19, 1988, the felony information was filed. On April 22 defendant was arraigned and entered a plea of not guilty. On April 28 defendant filed a motion to suppress evidence and also filed a request for change of venue. On May 5 the state filed suggestions in opposition to the documents filed by defendant on April 28. On May 25 the court granted the change of venue and the case was transferred to the Circuit Court of Camden County.

On June 1 the file was received in the Circuit Court of Camden County and a "pretrial notice for June 10 at 9 a.m." was sent to the attorneys. On June 10 defendant's counsel failed to appear. On June 14 the court entered an order to show cause why defendant's counsel, who is not defendant's present counsel, should not be held in contempt. On June 16 the court sent counsel a "notice of pretrial set for July 15, 1988, at 9 a.m.." On July 15 the case was "ordered to be set for trial." On July 20 defendant filed a request to set aside the show cause order of June 14. On July 22 the court entered an order "quashing citation for contempt." On August 10 the case was set for jury trial on November 8.

On September 7 the trial of the separate proceeding mentioned in footnote 2 took place in the Circuit Court of Laclede County.

On November 3 defendant filed a motion to dismiss "for lack of speedy trial." On November 8 defendant waived trial by jury. Defendant had previously requested a jury trial. The court heard arguments of counsel on defendant's motion to dismiss, denied the motion, and the one-day trial took place.

Defendant relies upon constitutional grounds to support his argument that he was denied a speedy trial. He makes no mention of § 545.780.1, which reads: "If defendant announces that he is ready for trial and files a request for a speedy trial, then the court shall set the case for trial as soon as reasonably possible thereafter." Defendant did not file a request for a speedy trial. Instead he filed, on November 3, 1988, a motion to dismiss.

In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972), the court found "no constitutional basis for

holding that the speedy trial right can be quantified into a specified number of days or months." At 92 S.Ct. p. 2192 the court said:

"A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

The court also said, at 2193:

"We regard none of the four factors identified above as *either a necessary or sufficient* condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." (Emphasis added.)

The *Barker* guidelines "have been followed and applied in Missouri in cases where it is claimed a violation of defendant's rights to a speedy trial occurred." *State v. Buckles,* 636 S.W.2d 914, 919 (Mo. banc 1982). The history of the instant case will be considered in light of the *Barker* factors.

(1) *Length of pretrial delay.* Defendant was taken into custody on October 18, 1987, and remained in custody until the trial, which took place on November 8, 1988. Thus, the delay was 12½ months. Missouri courts have stated that a delay of 8 months or longer is presumptively prejudicial. *State v. Robinson,* 696 S.W.2d 826, 831–832[10] (Mo.App.1985); *State v. Harris,* 673 S.W.2d 490, 493 (Mo.App.1984); *State v. Holmes,* 643 S.W.2d 282, 287 (Mo.

App.1982). This court assumes, arguendo, that the instant delay was presumptively prejudicial.

(2) *Reason for delay.* The burden is on the state to accord the accused a speedy trial and, if there is delay, the state must show reasons which justify that delay. *State v. Robinson,* supra, 696 S.W.2d at 832; *State v. Holmes,* supra, 643 S.W.2d at 287. Delays attributable to the defendant, such as asking for and being granted continuances or changes of venue, weigh heavily against the defendant. *State v. Robinson,* supra, 696 S.W.2d at 832; *State v. Harris,* supra, 673 S.W.2d at 494.

Defendant filed a motion for change of venue on April 28, the application was granted, and the file was not received in the Circuit Court of Camden County until June 1. Defendant's counsel failed to attend a pretrial hearing set for June 10. That failure resulted in an order to show cause why his counsel should not be held in contempt and that order was not quashed until July 22. On September 7 defendant and his present counsel, as well as the attorneys for the state, were involved in the separate trial mentioned in footnote 2. Simultaneous state prosecutions have been held to be a factor tending to justify some delay. *State v. Loewe,* 756 S.W.2d 177, 182 (Mo.App.1988). The record does not show any deliberate attempt on the part of the state to delay the trial in order to hamper the defense. Cf. *State v. Patterson,* 741 S.W.2d 298, 300 (Mo.App.1987). It is also true that defendant did not waive his right to a jury trial until the day of the trial itself, and it is likely that a bench trial could have taken place earlier. From the foregoing, it appears that a substantial portion of the delay was attributable to defendant or his prior attorney.

(3) *Assertion of the right to a speedy trial.* At no time did defendant file a request for a speedy trial so as to invoke § 545.780.1, supra. Although defendant has no affirmative duty to bring himself to trial, the court in *Barker,* supra, 92 S.Ct., at 2193, said: "Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."

832

In *State v. Bolin,* 643 S.W.2d 806, 815 (Mo. banc 1983), defendant did not assert his right to a speedy trial until some "months after his second arrest," and that delay was said to "contradict" his claim that his right to a speedy trial was violated. In *State v. Robinson,* supra, defendant did not assert his right to a speedy trial until 10 months after his arrest, and 3 days before the trial. The defendant had also been granted three continuances. The court rejected defendant's claim that his right to a speedy trial had been violated. In the case at bar defendant requested dismissal and at no time requested trial.

■ (4) *Prejudice to the defendant.* "The most important factor to be considered in the speedy trial equation is whether the delay has impaired the defendant's ability to make a defense." *State v. Holmes, supra,* 643 S.W.2d at 288. The factors to be assessed in determining whether delay resulted in prejudice to the defendant are (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the defendant's ability to defend himself. *Barker v. Wingo,* supra, 407 U.S. at 532, 92 S.Ct. at 2193. In *State v. Bolin,* supra, 643 S.W.2d at 815 the court said: "Undoubtedly, anxiety and concern exist in every criminal case, but 'that alone does not establish prejudice where, as here, the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances.' "

At the hearing on his motion to dismiss "for lack of a speedy trial," defendant introduced no evidence showing that the pretrial delay caused any witness to be unavailable. In his brief, defendant states: "Defense counsel explained to the court that defendant would be unable to call any witnesses who were present at the convenience store where defendant was arrested because of their inability to recall what had transpired almost 13 months earlier." There was no evidence that any such witness existed, nor was there evidence of what any witness might know. The facts of this case are simple. It appears that the only persons having knowledge of the material events of October 18, 1987, were the two highway patrolmen and defendant himself who was traveling alone. This court holds that the trial court did not err in denying defendant's motion to dismiss "for lack of speedy trial." Defendant's second point has no merit.

The judgment is affirmed.

HOGAN, C.J., and MAUS, J., concur.