STATE of Missouri, Respondent,

v.

Joseph W. FARRIS, Defendant–Appellant.

Joseph W. FARRIS, Defendant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17718, 18920.

Missouri Court of Appeals,
Southern District,
Division Two.

June 3, 1994.

Judith C. LaRose, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Presiding Judge.

A jury found defendant guilty of involuntary manslaughter, and he was sentenced to seven years' imprisonment. Defendant appeals, and that appeal is Case No. 17718. After the jury trial, defendant filed a motion under Rule 29.15,[1] seeking post-conviction relief. That motion was denied without an evidentiary hearing. Defendant's appeal from that denial is Case No. 18920. The appeals have been consolidated and will be dealt with separately in this opinion.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo1986, V.A.M.S.

## Case No. 17718

Defendant's sole point is that the trial court committed plain error in denying him a speedy trial, in violation of his rights under the Sixth Amendment to the United States Constitution and Art. I, § 18(a) of the Missouri Constitution, "in that defendant waited in jail for three years and two months before being brought to trial, a presumptively prejudicial length of time for no justifiable reason. This delay resulted in a manifest injustice to defendant."

Defendant concedes that his point was not properly preserved for appeal in that it was not raised in his motion for new trial as required by Rule 29.11(d). Defendant requests review under Rule 30.20 which authorizes this court, in its discretion, to consider plain errors affecting substantial rights when this court finds that manifest injustice or miscarriage of justice has resulted therefrom.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...."

In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), the Court identified four factors the courts should assess in determining whether a defendant has been deprived of his right to a speedy trial. The factors are: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.

The court also said at 533, 92 S.Ct. at 2193[23]:

"We regard none of the four factors identified above as *either a necessary or sufficient* condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." (Emphasis added.)

In *Barker*, 407 U.S. at 523, 92 S.Ct. at 2188, the Court found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." If a defendant has been deprived of his constitutional right to a speedy trial, dismissal is "the only possible remedy." *Strunk v. United States*, 412 U.S. 434, 438, 93 S.Ct. 2260, 2263[8], 37 L.Ed.2d 56 (1973).

The *Barker* guidelines "have been followed and applied in Missouri in cases where it is claimed a violation of defendant's rights to a speedy trial occurred." *State v. Buckles*, 636 S.W.2d 914, 919 (Mo. banc 1982). The *Barker* factors will be considered in order.

## Length of Delay

■ Unless factor (1) is present, there is no need to inquire into the presence of the other factors. *State v. Bolin*, 643 S.W.2d 806, 813 (Mo. banc 1983); *State v. Bohannon*, 793 S.W.2d 497, 503 (Mo.App.1990).

Speaking of this factor, the court, in *Doggett v. U.S.*, 505 U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), said at —— – ——, 112 S.Ct. at 2690–2691[2, 3]:

"The first of these is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay ... since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.... This latter enquiry is significant to the speedy trial analysis because, as we discuss below, the presumption that pretrial delay has prejudiced the accused intensifies over time."

In *Doggett*, at —— n. 1, 112 S.Ct. at 2691 n. 1, the court said:

"Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at

least as it approaches one year.... We note that, as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry."

Missouri courts have stated that a delay of eight months or longer is presumptively prejudicial. *State v. Darnell,* 858 S.W.2d 739, 745 (Mo.App.1993); *State v. Smith,* 849 S.W.2d 209, 214 (Mo.App.1993); *State v. Ingleright,* 787 S.W.2d 826, 831 (Mo.App.1990); *State v. Robinson,* 696 S.W.2d 826, 831–832 (Mo.App.1985); *State v. Holmes,* 643 S.W.2d 282, 287 (Mo.App.1982).

Defendant was arrested on April 3, 1988, and remained in jail until the commencement of the trial on June 19, 1991. This delay is presumptively prejudicial and requires inquiry into the other factors.

### Reasons for the Delay

"Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. We attach great weight to · such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." *Doggett,* —— U.S. at ——, 112 S.Ct. at 2693.

■ "*Barker* made it clear that 'different weights [are to be] assigned to different reasons' for delay.... Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness ... and its consequent threat to the fairness of the accused's trial." *Id.*

■ "Where the defendant 'has contributed to the delay by asking for and being granted continuances, he cannot later successfully allege the denial of his constitutionally guaranteed right to a speedy trial.' ... Delays attributable to the defendant weigh heavily against the defendant." *State v. Darnell,* 858 S.W.2d 739, 745 (Mo.App.1993) (citing authorities).

■ "Reasons for the delay are weighed. Delays deliberately intended to hamper the defense are weighed heavily against the State.... Delays attributable to the State's negligence or overcrowded court dockets are weighed less heavily against the State.... Delays for valid reasons, such as unavailability of witnesses, are justified and are not weighed against the State." *State v. Raine,* 829 S.W.2d 506, 512 (Mo.App.1992) (citing authorities).

■ Where the defendant contributes to the delay by asking for and being granted a continuance or a change of venue, or a change of judge, those reasons for the delay are weighed heavily against him. *State v. Robinson,* 696 S.W.2d at 832. Similarly, time spent for mental examinations, at least where the accused himself has put in issue his mental competency to stand trial, is weighed against defendant. *State v. Brown,* 502 S.W.2d 295, 301–302 (Mo.1973). See also *State v. Thomas,* 625 S.W.2d 115, 125 n. 5 (Mo.1981).

"Still, it is ultimately the duty of the state to bring a defendant to trial." *State v. Bolin,* 643 S.W.2d at 814 (citing *Barker,* 407 U.S. at 527, 92 S.Ct. at 2190.)

The following is a chronology of the significant events:

#### 1988

April 3—Date of offense. Defendant arrested.

[Circuit Court of Shannon County]

April 3—State files complaint alleging defendant committed the felony of murder in the first degree.

May 31—Preliminary hearing. Defendant bound over to circuit court for arraignment.

June 7—Information filed, charging murder in the first degree (Count I) and armed criminal action (Count II).

June 13—Defendant appears with attorney Fred Martin and enters plea of not guilty.

Defendant files notice of intention to rely on defense of "mental disease or defect excluding responsibility."

Trial court orders defendant to be examined by a qualified person pursuant to Chapter 552 RSMo.

June 17—Examination of defendant set for June 28 at Farmington State Hospital.

Nov. 4—Report of examination filed in trial court.

Nov. 28—Court reviews medical report and finds that defendant is capable of aiding his own defense.

Case Continued by agreement to December 27.

Dec. 12—Case continued by agreement to January 9, 1989.

### 1989

Jan. 3—Defendant's new attorney, Peter Sterling, files entry of appearance.

Jan. 10—Defendant appears with his "attorneys." At defendant's request, case continued to February 14.

Feb. 14—Defendant appears with attorney. Prosecuting Attorney not present. Case continued to March 13 for setting.

March 13—Case set for trial on May 23–24.

April 25—Defendant files application for continuance. The application stated: "A substantial amount of work remains to be done in order to render effective assistance of counsel at defendant's trial." Depositions and interviews need to be conducted with respect to out-state witnesses, including one in Alaska and two in New York. The witnesses are not available by telephone. "Finally, there is an issue as to defendant's mental status. Dr. William Logan of the Menninger Clinic in Topeka, Kansas, is conducting an examination of defendant. There is a substantial likelihood that additional time may be necessary in order to fully explore and document defendant's mental condition."

Sept. 13—Diagnostic interview report of Menninger Clinic filed.

Nov. 28—"Stipulation to Evidence on Defendant's Competency" filed.

Dec. 5—Suggestions in support of defendant's competency to stand trial filed.

Dec. 20—"Court finds from the medical reports and evidence presented that defendant does not lack the capacity to understand the proceedings against him or to assist in his own defense."

### 1990

Jan. 8—Case set for trial on April 3.

March 26—Motion to suppress statements filed.

March 30—Motion for change of venue filed by defendant.

April 2—The state moved for a continuance "from the date of April 3, 1990, for the reason the prosecuting attorney is not available because of medical reasons."

April 3—State's application for continuance is sustained.

April 9—Venue changed to Texas County per stipulation and request of parties. [Circuit Court of Texas County]

April 24—Case received on change of venue from Shannon County.

Oct. 2—Defendant appears in person and by counsel. State appears by prosecutor. Evidence presented on motion to suppress "and recessed at 5 p.m. for presentation of additional evidence at later time."

Nov. 19—Defendant files "Motion to Dismiss or to Abate." Motion recites that the information filed on June 7, 1988, charged murder in the first degree (Count I) and armed criminal action (Count II), and that defendant has not been accorded a preliminary hearing on Count II. Defendant moves that Count II be dismissed or abated and remanded for a preliminary hearing.

Dec. 28—Defendant's motion to suppress overruled. "Due to Judge Hutchison

leaving office December 31, 1990, Judge Hutchison recuses from further action in this matter."

### 1991

Jan. 3—Defendant files request for speedy trial.

Jan. 4—Order appointing Judge John Wiggins to hear this cause.

? Case set for February 25, 1991.

Feb. 19—Defendant appears by attorney Sterling and requests "that the trial setting in this case be moved from February 25, 1991, to June 19, 1991, because the defense is unable to secure a certificate to compel the attendance of Mark Hanrahan, an out-of-state witness. Counsel is authorized to state that plaintiff's counsel does not oppose this request."

June 19—Count II of information stricken. Trial commences.

June 22—Jury finds defendant guilty of involuntary manslaughter.

This court has reviewed the foregoing chronology and assigned specific categories to the various time periods. Some of those periods may satisfy more than one category. The categories themselves are not subject to precise delineation, and this is especially so where, as here, the speedy trial issue has been raised initially on appeal.

The categories are: (A) ordinary processing—no unusual delay; (B) delay attributable to defendant; (C) delay agreed to by both sides; (D) unusual delay—attributable to state or unexplained.

Using the foregoing categories, the following analysis seems reasonable:

### 1988

April 3 to June 13—A.

June 13 to December 12—A and B.

December 12 to December 31—C.

### 1989

January 3 to January 10—C.

January 10 to February 14—B.

February 14 to March 13—D.

March 13 to April 25—A.

April 25 to November 28—B.

November 28 to December 31—A.

### 1990

January 1 to March 26—A.

March 26 to March 30—B.

March 30 to April 2—A.

April 2 to April 9—D.

April 9 to April 24—A.

April 24 to October 2—D.

October 2 to December 28—B.

December 28 to December 31—A.

### 1991

January 3 to February 19—A.

February 19 to June 19—B and C.

June 19 to June 22—A.

Category D is the one most favorable to defendant's claim. Category D contains approximately 193 days or approximately 6½ months, 160 days of which took place beginning April 24, 1990. All of the category D periods occurred before defendant filed his request for speedy trial.

### Defendant's Assertion of His Right

Although defendant has no affirmative duty to bring himself to trial, the court in *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, said: "Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." "[I]t seems fairly clear from case law that only a formal request for a speedy trial will work to assert such right." *State v. Smith*, 849 S.W.2d at 214[12].

On January 3, 1991, defendant filed a request for speedy trial, and trial was set for February 25, 1991. On February 19, 1991, at defendant's request, the trial setting was stricken and, also at defendant's request, the trial was reset for June 19, 1991, when it commenced.

Upon the filing of defendant's request for speedy trial, the trial was scheduled to take place 7½ weeks after the request. There is no showing that an earlier setting was possible or practicable.

### Prejudice to Defendant

■ "[I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' ... And though time can tilt the case against either side, ... one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, ... it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett v. U.S.*, —— U.S. at —— – ——, 112 S.Ct. at 2692–2693. (Citing authorities.) "To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Id.* at ——, 112 S.Ct. at 2694.

■ Referring to this factor as "the most important factor in the speedy trial analysis", the court, in *State v. Darnell*, 858 S.W.2d at 745–746, said: "This factor is assessed in light of the interests protected by the speedy trial right: (1) prevention of oppressive pretrial imprisonment, (2) minimization of the defendant's anxiety and concern, and (3) limitation of the possible impairment of the defense.... The most important of these interests is the last—whether the delay has prejudiced the defendant's ability to make a defense."

"The failure to present evidence of actual prejudice weighs heavily in favor of the government." *U.S. v. Baker*, 10 F.3d 1374, 1401 (9th Cir.1993).

"Any prejudice complained of must be actual, apparent on the record or by reasonable inference, 'not speculative or possible prejudice.' *State v. Buckles*, 636 S.W.2d 914, 920

---

**2.** Defendant does not quote the full statement from *Bolin*, which reads: "Undoubtedly, anxiety and concern exist in every criminal case, but 'that alone does not establish prejudice where, as here, the defendant neither asserts nor shows that the delay weighed particularly heavily on

---

(Mo. banc 1982)." See also *State v. Loewe*, 756 S.W.2d 177, 182[12] (Mo.App.1988).

With regard to the prejudice factor, defendant's brief argues: Defendant was held in jail on this charge and no other. Defendant suffered from anxiety and concern which exists in every criminal case as recognized in *State v. Bolin*, 643 S.W.2d 806, 815 (Mo. banc 1983).[2] Defendant developed claustrophobia while in jail and had to be given medication which caused him to have side effects of slurred speech and involuntary movement. Defendant's defense may have been impaired by his claustrophobia and mental suffering while incarcerated. He could not assist in his defense as well as he could if he was mentally healthy.

In response to the foregoing argument, the state's brief contains, and the record supports, the following statement: "Defendant does not contend that any of his witnesses died or that the memories of any of his witnesses faded. He does allege that he 'developed claustrophobia while in jail and had to be given medication.' At sentencing, defendant told the court that doctors felt that the claustrophobia 'comes from my childhood that's finally caught up with me.' Defendant has not offered any proof that his condition was caused by his incarceration. Two mental evaluations were conducted on defendant, and defendant was determined to be able to assist in his defense. Furthermore, as previously shown, the great majority of delay in this case in getting to trial was occasioned by requests for continuances by defendant, motions for change of venue, and requests for mental evaluations."

In *State v. Loewe*, 756 S.W.2d 177 (Mo. App.1988), the court said, at 180:

"Plain error is invoked sparingly and is applied in those cases only 'where there is a strong, clear showing of manifest injustice or a miscarriage of justice.' Whether or not plain error is present is determined by the facts of the individual case. It is the defen-

---

him in specific instances.' [*State v. Black*, 587 S.W.2d 865, 887 (Mo.App.1979)] (quoting *Morris v. Wyrick*, 516 F.2d 1387, 1391 (8th Cir.) *cert. denied*, 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975))."

dant's burden to prove the alleged error constitutes manifest injustice. If guilt is established by overwhelming evidence, then there is no injustice in refusing to invoke the rule." (citing authorities)

After considering the record on appeal in light of the *Barker* factors and other relevant factors, this court concludes that the delays in the trial court proceedings, although regrettable, do not rise to the level of plain error as that term is used in Rule 30.20 as set forth in the third paragraph of this opinion. Defendant's point has no merit.

The judgment is affirmed.

### Case No. 18920

■■■ Movant's sole point is that the trial court erred in failing to issue findings of fact and conclusions of law in connection with its denial of his Rule 29.15 motion. This point is meritorious and requires reversal of the order denying the Rule 29.15 motion and remand.

"The court shall issue findings of fact and conclusions of law on all issues presented, whether or not a hearing is held, within 30 days of the submission of the case." Rule 29.15(i).

Movant filed, pro se, his Rule 29.15 motion. Thereafter, movant's counsel filed a document entitled "Notice of Determination of Counsel Not to File Amended Motion and Decision to Stand on Pro Se Motion and Request for Hearing Thereon." Later the trial court entered its order denying movant's request for an evidentiary hearing and denying movant's Rule 29.15 motion. The trial court's order contained no findings of fact or conclusions of law on all issues presented.

In *State v. Rouse*, 866 S.W.2d 179 (Mo. App.1993), the court said, at 180:

"Rule 29.15(i) requires the court to issue findings of fact and conclusions of law on all issues presented whether or not a hearing on the motion is held. In *Charles v. State*, 792 S.W.2d 59, 60[2] (Mo.App.1990), this court held that appellate courts will not supply necessary findings of fact by implication. This court's review of the denial of the motion under Rule 29.15 is limited to a determination of whether or not the findings of fact and conclusions of law of the trial court are clearly erroneous. Rule 29.15(j). Without findings of fact and conclusions of law entered by the trial court, there is nothing for this court to review."

In *Trehan v. State*, 835 S.W.2d 427 (Mo. App.1992), this court said, at 430:

"We recognize that the requirement that the motion court issue findings of fact and conclusions of law is not without exception. *See, e.g., Guyton v. State*, 752 S.W.2d 390 (Mo.App.1988), in which the eastern district of the court of appeals identified two exceptions: where the issue confronting the motion court is one of law and not of fact and where the record allows the appellate court to determine the correctness of the motion court's action. *Id.* at 391–92[1, 2].

"This district of the court of appeals likewise has held that where findings of fact and conclusions of law are absent, remand is not necessary where the appellate court can, from the record, determine the correctness of the motion court's action. *Luster v. State*, 795 S.W.2d 109 (Mo.App.1990). We note, however, that certain opinions of the western district appear to conflict with the view that findings and conclusions are not required under all circumstances. *See, e.g., Brown v. State*, 810 S.W.2d 716 (Mo.App.W.D.1991); *Charles v. State*, 792 S.W.2d 59 (Mo.App. W.D.1990).

"Despite the exceptions that exist, we believe the better practice to be for the motion court to adhere to the clear language of Rule 24.035(i) (and 29.15(i), where applicable), and issue findings of fact and conclusions of law on all issues presented to enable the appellate court to conduct its review under Rules 24.035(j) and 29.15(j)."

The judgment is reversed and the cause remanded with instructions to the trial court to comply with Rule 29.15(i).

PREWITT and GARRISON, JJ., concur.