STATE of Missouri, Respondent,

v.

Anthony DIXON, Appellant.

Nos. WD 51493, WD 53645.

Missouri Court of Appeals,
Western District.

May 12, 1998.

Rosalynn Koch, Asst. Public Defender, Columbia, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

HANNA, Judge.

On June 9, 1995, the defendant, Anthony M. Dixon, was convicted after a jury trial of forcible rape (§ 566.030, RSMo 1994), forcible sodomy (§ 566.060, RSMo 1994), two counts of robbery in the first degree (§ 569.020, RSMo 1994) and two counts of armed criminal action (§ 571.015.1, RSMo 1994). The trial court imposed sentences totalling life plus sixty years on August 7, 1995.[1] The defendant filed a Rule 29.15 motion. Following an evidentiary hearing, the motion court denied the defendant's Rule 29.15 motion. The defendant raises six points of error: that the trial court excluded his alibi testimony and denied his right to a speedy trial, that the motion court disallowed alibi testimony of his wife from a previous trial, that the trial court failed to apply the collateral estoppel doctrine and thereby relitigated an ultimate fact issue decided in a prior trial; that the trial court overruled his motion regarding the search and seizure and testimony of an audio tape of his voice; and that the motion court denied his charge that his attorney was ineffective in failing to file a

---

1. The sentences imposed were two life terms (for sodomy and rape) and terms of 30 years for each of the two first-degree robbery convictions and each of the two armed criminal action convictions. The trial court directed that the life sentences run concurrently, to be followed by a 30–year term for robbery, to be followed by the three remaining 30–year terms running concurrently, for a total of life plus 60 years.

notice of alibi defense precluding the defendant from testifying at trial.

An abbreviated statement of the underlying facts are as follows. On August 4, 1993, Sharon Neal was working the 11:00 p.m. to 7:00 a.m. shift for the night clerk at the Super 8 Motel in Harrisonville where she was employed as the manager. At approximately midnight, she was standing near the door of her apartment in the hotel, which was located down the hall from the front desk, when she noticed a man standing in the doorway with a gun. The man was wearing dark clothing, including a dark-hooded sweatshirt with the hood up, and he had a sock-type hat pulled down over his face. From the eye and mouth cut-outs in the hat, she could tell that the individual was a black man with a short-cropped moustache.

The man aimed a gun at her and told her to get down on the carpet. He told her that he wanted to know where the money was. She responded that the motel did not have a safe. The gunman then went to the office. After seeking her assistance, the man found the cash drawer and used the key to take out the money. He demanded more money, and Neal finally told him that there was money in a different drawer. After retrieving the money, he returned and demanded more money.

He then obtained a piece of clothesline rope from the bag he was carrying and tied Neal's hands behind her back. He pressed his knees into her back, put the gun to her head and again demanded more money. He also went through the motel cards that indicated which rooms in the motel were occupied and asked Neal about a master key.

He ordered her to get up, but she told him that her rheumatoid arthritis prevented her from doing so, unless he untied her hands. The assailant then ordered her to put her head and chest in the chair. He pulled down her pants and proceeded to rape her vaginally and rectally.

At this point, James Shaffer, a guest at the hotel, entered the office. He encountered a man dressed in dark clothing and asked for change. Instead, the gunman pointed his gun between Shaffer's eyes, told Shaffer to give him his money, and threatened to kill him. Shaffer gave him the two dollars he had, and then the gunman told Shaffer to lie on the office floor and again threatened to kill him. As Shaffer crawled around behind the front desk, he saw a woman, whose hands were tied together, lying on the floor. The gunman then tied Shaffer's hands together. Within a few minutes, James Nesmith, a man staying with Shaffer at the hotel, was also brought into the room by the gunman and was told to lie on the floor. The gunman tied up Nesmith and then left, after announcing his intention to check some of the hotel rooms. Neal and Nesmith managed to get loose after 10 or 15 minutes and called the police.

Shaffer, who initially saw the gunman behind the front desk with his sock cap rolled up above his eyes, was interviewed by the police in an effort to obtain a composite drawing of the suspect. Approximately three weeks after the incident, the police showed Shaffer a photographic line-up. Shaffer immediately identified the defendant as the gunman from a photo array. Shaffer also identified the defendant's voice from an audiotape that contained the voices of five or six individuals. Subsequently, Neal listened to the same audiotape and when she heard the third voice, she began to shake, cry and perspire. She listened to the remaining voices, and then identified the third voice on the tape as the voice of her attacker.

■ In his first point, the defendant claims that the trial court erred in excluding his alibi testimony. Rule 25.05(a)(5) requires that if the defendant intends to rely on the defense of alibi, and the state requests the specifics, disclosure shall be in a written statement by counsel for the defendant of his intent, and counsel shall give specific information concerning the alibi including the names and addresses of the witnesses who will establish the defendant's alibi. *Id.* The defendant claims that the trial court's ruling (unidentified in the brief and argument before this court) denied him his constitutional right to testify in his own behalf and in his own defense. This point of error was raised for the first time in the defendant's *pro se* Rule 29.15 motion. It was not raised during

trial or in his motion for new trial. It is now raised as plain error, pursuant to Rule 30.20.[2]

At trial, the defendant did not attempt to present any alibi testimony. In fact, the defendant's brief does not make any reference to a trial court ruling which is claimed to have denied his right to present alibi testimony. Apparently, the assistant prosecuting attorney had a concern that the defendant was intending to present alibi evidence and had requested the information pursuant to Rule 25.05(a)(5). This concern arose as a result of the defendant's previous statement(s) to the court that he wished to testify at trial and present an alibi defense. On the other hand, the trial record shows that the defendant's attorney repeatedly indicated, in response to discovery requests and to questions during at least at two pretrial hearings, that counsel did not intend to present any alibi testimony from either the defendant or any other witnesses. In light of the inconsistent statements from the defendant and his counsel, the trial court specifically noted in a pretrial conference in which the defendant was present, one week before the trial was scheduled, that alibi testimony could not be presented from either the defendant or defense witnesses without the requisite notice. The trial judge indicated that if the defendant intended to present an alibi defense, the defendant would have a problem and the court would probably have to *"take some action."*

Thus, the trial judge did not exclude defendant's alibi evidence. The defendant's argument is based upon an assertion that is contradicted by the record. At trial, the defense rested without putting on any evidence; the defendant did not attempt to present an alibi defense.[3] Since the defendant never attempted to put on an alibi defense, either himself or by the testimony of other witnesses, the trial judge never ruled that the defense of alibi should be excluded. The court cannot be convicted of error for excluding testimony that the defendant never presented or intended to introduce. The court cannot be faulted for failing to take action it was not asked to take. *See* Rule 84.13(a)("allegations of error not presented to or expressly decided by the trial court shall not be considered in any appeal from a jury tried case"); *State v. Jordan*, 751 S.W.2d 68, 75 (Mo.App.1988); *State v. Webb*, 583 S.W.2d 536, 538 (Mo.App.1979). Point denied.

█ The defendant next contends that the trial court erred in denying his motion to dismiss because his constitutional right to a speedy trial was denied. He argues that his trial did not commence for over 17 months after the indictment. He asserts that this was due to unreasonable delays which prejudiced him.

The following is the pre-trial chronology of this matter:

January 20, 1994 An indictment was returned against the defendant.

2. The defendant also claims that the motion court erred in refusing to consider this issue in the post-conviction proceeding, by finding: (1) that the defendant choose to exercise his constitutional right to remain silent, and (2) that a claim challenging the constitutionality of a statute or rule is not cognizable in a post-conviction proceeding. We are only addressing the direct appeal because a post-conviction motion is not a substitute for a direct appeal and cannot be used to review issues, even constitutional issues, which properly could have been raised on direct appeal, absent special circumstances. See Rule 29.15; *State v. Redman*, 916 S.W.2d 787, 793 (Mo. banc 1996)(ruling that, generally, trial error are not cognizable in postconviction proceedings); *State v. Tolliver*, 839 S.W.2d 296, 298 (Mo. banc 1992). Compare *Geiler v. State*, 921 S.W.2d 74, 75 (Mo.App.1996) (ruling that a post-conviction proceeding was not final in that the motion court had not addressed the defendant's denial of due process claim).

3. At oral arguments, defendant's counsel asserted that the defendant's trial counsel's decision to not pursue an alibi defense operated to "waive" defendant's constitutional right to testify, and that a constitutional right cannot be waived by counsel. In support of this contention, defendant's counsel cited *Clemmons v. Delo*, 124 F.3d 944, 956 (8th Cir.1997) *petition for cert. filed*, 118 S.Ct. 1548, 66 U.S.L.W. 3475 (U.S. 1998)(№ 97–1159)(ruling that the right to confrontation cannot be waived) (citations omitted). The defendant was not barred from testifying, however, as the decision to not pursue an alibi defense only barred him from testifying as to his alternate whereabouts during the incident. Furthermore, as discussed *supra*, the motion court determined that the defendant discussed the possibility of testifying with his counsel, and decided to not testify.

February 7, 1994 Trial counsel was appointed.

March 3, 1994 State's request for a continuance was granted.

April 25, 1994 Court transferred venue to Johnson Co. pursuant to defendant's request.

June 3, 1994 Defendant filed a request for a speedy trial.

August 29, 1994 Defendant's request for a continuance was granted & the cause was set for trial on Dec. 19, 1994.

December 19, 1994 Defendant's case was passed, and a previously scheduled case was tried.

February 2, 1995 Defendant requested a change of judge after his witness list was not endorsed.

February 22, 1995 Defendant was assigned to a new judge.

March 6, 1995 Court denied defendant's motion for a sooner trial date.

June 7, 1995 Defendant's case was tried.

■ The defendant has the constitutional right, under the Sixth Amendment of the United States Constitution and Article I, § 18(a) of the Missouri Constitution, to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972); *State v. Davis*, 903 S.W.2d 930, 935–36 (Mo.App.1995). In order to assess whether a defendant has been denied this right, four factors are weighed: (1) length of delay; (2) reason for the delay; (3) how the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 92 S.Ct. at 2191; *State v. Bolin*, 643 S.W.2d 806, 813 (Mo. banc 1983)(adopting the four part analysis in *Barker*).

■ Missouri courts have ruled that we must first consider whether the length of delay is "presumptively prejudicial" and have found that a delay of eight months or longer should be considered presumptively prejudicial. *State v. Ingleright*, 787 S.W.2d 826, 831 (Mo.App.1990) (citations omitted). However, if the delay is attributable to the defendant's actions, that time must be subtracted from

the total delay, *Davis*, 903 S.W.2d at 936, and the defendant's delays, "such as asking for and being granted continuances or changes in venue, weigh heavily against the defendant." *Ingleright*, 787 S.W.2d at 831 (citations omitted).

The defendant first filed a request for change of venue on March 3, 1994. On July 28, 1994, less than two months after he filed his request for a speedy trial, the defendant filed a request to continue the case. After the case was rescheduled by the circuit court, the defendant requested a change of judge, which was granted. His case was reassigned to Judge Dandurand. These requests, made by the defendant, resulted in significant delays as to the setting of a trial date.[4]

■ "Delays attributable to the defendant weigh heavily against the defendant." *State v. Farris*, 877 S.W.2d 657, 660 (Mo.App.1994)(quoting *State v. Darnell*, 858 S.W.2d 739, 745 (Mo.App.1993)). Thus, we cannot presumptively find that the delay denied the defendant's constitutional right to a speedy trial, in light of the defendant's significant contribution to the delay, and that there is nothing in the record to suggest that any of the state's delays were for other than "valid reasons." *State v. Woodworth*, 941 S.W.2d 679, 694 (Mo.App.1997); *Farris*, 877 S.W.2d at 660. Point denied.

In his third point, the defendant contends that the motion court erred in denying his Rule 29.15 motion charging his attorney with ineffective assistance. He argues that his attorney did not pursue his alibi defense in that he failed to call him and his wife, Kimberly Dixon, as an alibi witnesses.

■ At the Rule 29.15 hearing, the defendant testified he wanted to have his wife testify as to his alibi on the day of the crime. Because Ms. Dixon had been subpoenaed but failed to appear at the Rule 29.15 hearing, counsel asked leave to admit Ms. Dixon's testimony given in a previous trial in Cooper County in which she offered an alibi for the defendant. A photocopy of the testimony

**4.** We note that the defendant was incarcerated until early March of 1995, as a result of charges pending against him in another county on another matter. It would be difficult for the defendant to support a claim of prejudice. See *State v. Woodworth*, 941 S.W.2d 679, 694 (Mo.App.1997).

was offered. The offer of proof was denied. Presumably, since Ms. Dixon had been subpoenaed to appear at the Rule 29.15 hearing and had failed to show, the purpose of the photocopy of Ms. Dixon's testimony was necessary to show what her testimony would have been at the criminal trial if she had been called. In essence, the defendant is complaining about an evidentiary ruling at the Rule 29.15 hearing denying his offer of proof of the transcript of Ms. Dixon's testimony. The proffered testimony took place in the defendant's trial for robbery in Sedalia. The denial of the offer of proof in the Rule 29.15 hearing is the basis of the defendant's claim which is erroneous.

Regardless of whether the transcript of Ms. Dixon's testimony was inadmissible in the Rule 29.15 hearing because it was not properly certified,[5] we find that the motion court ruling was not erroneous in that her prior testimony did not meet the legal requirements for admissibility. The Missouri Supreme Court has determined that testimony from an earlier judicial proceeding is admissible in a subsequent case if: (1) it was given before a judicial tribunal; (2) the witness was sworn and testified; (3) the opposing party was present and had the opportunity for cross-examination; (4) the parties and issues were substantially the same in the case on trial; and (5) the witness is unavailable even though due diligence was exercised in an effort to obtain the witness' presence. *See State v. Sumowski,* 794 S.W.2d 643, 648 (Mo. banc 1990) (citations omitted).

The defendant has failed to meet the forth requirement that the parties and issues in the previous proceeding were "substantially the same" as those in the present case. The previous case was a criminal case in Cooper County for a robbery committed in a motel in Sedalia. The issues were not substantially the same.

■ Furthermore, defendant's trial counsel decided that the testimony would be harmful and did not call Ms. Dixon for trial strategy reasons, and the defendant agreed

that she should not testify. We review the motion court's denial of a post-conviction motion as to whether its findings of fact and conclusions of law were "clearly erroneous." Rule 29.15(j) & (k); *Moore v. State,* 827 S.W.2d 213, 215 (Mo. banc 1992). Such findings are clearly erroneous if, after a review of the record, the court is left with the "definite and firm impression that a mistake has been made." *Moore,* 827 S.W.2d at 215 (citing *Richardson v. State,* 719 S.W.2d 912, 915 (Mo.App.1986)). In order to establish ineffective assistance of counsel, the movant must prove, by a preponderance of the evidence, that counsel did not demonstrate the customary skill and diligence that a reasonably competent attorney would display under the same or similar circumstances, and that the movant was prejudiced thereby. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

The evidence before the motion court was that Ms. Dixon's testimony would have placed the defendant near the scene of the crimes in Harrisonville just hours before they were committed. Additionally, trial counsel had substantial doubts of the defendant's proposed alibi testimony. Defendant's trial counsel decided, as a matter of trial strategy, that this evidence would be harmful and that Ms. Dixon should not be called to testify. Other than the identification witnesses, which we have noted earlier, the state had no other evidence to put the defendant in the vicinity of the crime. The defendant's wife would have put the defendant very close to the Harrisonville motel only hours prior to the commission of the crimes. Importantly, trial counsel testified that he had substantial doubts about the legitimacy of the testimony.[6]

■ The defendant also suggests that his trial counsel was ineffective for not calling him to testify about his alibi. The defendant and his attorney discussed the possibility of the defendant testifying as to his alibi, and they made the mutual decision that the

---

5. The state objected that the transcript was not certified in accordance with § 490.130, RSMo 1994.

6. We note that "[a] lawyer may refuse to offer evidence that [he] reasonably believes is false." Rule 4, Rule 3.3(c) of the "Rules of Professional Conduct."

defendant would not testify because of the resulting exposure to cross-examination regarding his prior felony convictions for kidnapping and robbery. He was on parole for kidnapping and robbery convictions when he was charged with the commission of the crimes here. Trial counsel's trial strategy was reasonable. Trial counsel indicated that he fully apprised his client of his right to testify, after the state had presented their case, and that the defendant elected not to testify based on his trial counsel's advice.

The motion court found that the defendant "knowingly decided not to testify at trial." The motion court concluded that the defendant's trial counsel's decision to not present an alibi defense, because this defense would place the defendant in the vicinity of the crime and would not have unqualifiedly supported the defendant's position, was a matter of reasonable trial strategy. Matters of reasonable trial strategy, including a decision to not call an alibi witness, are virtually unchallengeable and cannot form the basis of a claim for ineffective assistance of counsel. *See State v. Boyd*, 842 S.W.2d 899, 905 (Mo. App.1992) (citations omitted). "If counsel believes that the witness's testimony would not unqualifiedly support the defense, the decision of whether to call the witness is a matter of trial strategy that will not support a finding of ineffective assistance of counsel." *State v. Johnson*, 901 S.W.2d 60, 63 (Mo. banc 1995). The defendant's trial counsel's decision to not call Ms. Dixon (and not pursue an alibi defense) was a determination based on sound trial strategy and the motion court did not err in denying the defendant's Rule 29.15 motion. This point is denied.

The defendant's remaining points on appeal appear to have been raised and drafted by the defendant himself. In his fourth point, the defendant argues that the trial court erred in denying his motion for dismissal because the state was "collaterally estopped from relitigating an issue of ultimate fact which had been decided in a prior criminal case." The defendant requests plain error review of his oral *pro se* motion, made to the court prior to the commencement of trial, requesting that the prosecution be dismissed on the theory of collateral estoppel because the defendant was acquitted in the Cooper County prosecution of robbery and armed criminal action. He asserts that this fact precluded the prosecution of the present charges. The prior prosecution was for charges arising from an incident that occurred in Sedalia on September 7, 1993. In the prior prosecution in which the defendant claims he was acquitted, Neal and Shaffer were apparently called as state witnesses and testified that the defendant was the person who had perpetrated similar crimes against them in Harrisonville approximately a month earlier on August 5, 1993.

The rule of collateral estoppel—that when an issue of ultimate fact has been determined, that issue cannot be litigated between the same parties in any future lawsuit—is applicable to the states. *See Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Although collateral estoppel is rarely available in a criminal context, if a specific and necessary finding of one particular fact can be extracted from the jury's decision, that fact or issue is barred from relitigation by the doctrine of collateral estoppel. *State v. Johnson*, 598 S.W.2d 123, 125–26 (Mo. banc 1980).

Collateral estoppel is not applicable to the facts here, however, as the previous trial was for different charges, in a different incident, on an earlier date, in a different county, and involving different victims. Although the state evidently called Neal and Shaffer as witnesses in the previous trial, the purpose was to demonstrate that the defendant committed a robbery seemingly similar in method, not whether he committed the crimes charged in this present prosecution. The jury, in the prior prosecution, was not asked, nor did it decide whether the defendant committed the crimes at issue in this proceeding. "It cannot be said that there was only a 'single rationally conceivable issue in dispute before the jury.'" *Id.* at 126 (quoting *Ashe*, 90 S. Ct at 1195.) The two prosecutions were pursued to decide different issues, and the trial court did not plainly err in denying the defendant's motion to dismiss based on collateral estoppel. Point denied.

■ In his fifth point, the defendant contends that the trial court plainly erred in denying his motion to suppress evidence and, as such, in failing to exclude the voice identification testimony by two witnesses. The defendant claims that the voice identification testimony was not admissible in that the audiotape used for the identification was obtained in an illegal search and seizure, was "irreparably suggestive," and exceeded the scope of the defendant's consent.[7]

The state claims that neither side presented any evidence at trial on the issue of whether the voice identification testimony was the product of an illegal arrest or search and seizure, nor on whether the defendant consented to the use of his voice in an audiotape lineup. We agree. Although the defendant's motion to suppress was much broader with regard to the audiotape identifications, our review of the record shows that the only issue argued at the suppression hearing was whether the audiotape was the product of unnecessarily suggestive identification procedures utilized by the police. The defendant's pre-trial motion to suppress sought to keep out the state's evidence obtained in connection with his arrest, including "any and all out-of-court identifications made of the defendant." The defendant's motion raised a number of assertions in support of his request that evidence of the identification of his voice by the victims, from the audiotape, be suppressed. The trial court denied the motion to suppress in all respects, and ruled that the identification was not so impermissibly suggestive that it causes the in-court identification to be unreliable. Hence, the only concern is the claim that procedures used by the police officer regarding the audiotape identification, were "impermissibly suggestive."

The defendant claimed, in his motion to suppress, that the audiotape was made in connection with the Sedalia crime investigation. On the tape, the defendant was the third voice recorded and he read numerous statements and identified himself as "Anthony Dixon." The tape was eventually sent to the Harrisonville Police Department, where Shaffer identified the third voice on the tape as the perpetrator of the Harrisonville crime. Subsequently, Nesmith listened to the tape and was initially unable to identify the defendant. Finally, Neal identified the third voice as the perpetrator. Prior to each identification, the identifying witnesses had been in the company of police officers who were aware that Anthony Dixon was being held in connection with the crimes, and that he had previously been convicted of robbery. The defendant claimed that "[t]he deliberate use of the name 'Anthony Dixon' in the voice line-up tainted each and every voice identification made in this case" as "[i]t is inconceivable that the identifying witnesses had been kept in isolation regarding the name 'Anthony Dixon.' "

The state contends that there was nothing unnecessarily or inherently suggestive about the identification procedures utilized by the police because both witnesses did not know the name of the person who was the suspect in the crimes prior to listening to the tape.

Our review of the trial court's motion to suppress ruling is limited to whether the evidence was sufficient to support the ruling and we must review the facts in a light most favorable to the ruling. *See State v. Rushing*, 935 S.W.2d 30, 32 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997); *State v. McNaughton*, 924 S.W.2d 517, 522–23 (Mo.App.1996). Furthermore, we are required to defer to the

---

**7.** The parties contest whether the defendant adequately preserved these claims for appellate review. The state claims that any objection made by the defendant at trial was a general objection as to "all the issues that [he] took up in the [suppression] hearing" and, as such, the defendant failed make a specific objection to the testimony when the challenged evidence was introduced, as well as in his motion for new trial. See *State v. Williams*, 951 S.W.2d 332, 335 (Mo.App.1997)(ruling that the specific issue in a motion to suppress must be objected to at trial

and again in the motion for new trial.) Our cursory review of the record leaves it unclear as to whether the defendant adequately preserved his record. However, since the defendant has only requested "plain error" review pursuant to Rule 30.20, we will provide this review. In criminal matters, plain error is only applicable if there is a strong showing of "manifest injustice" or a "miscarriage of justice" if the trial court's error is not corrected. See id.; *State v. Reichert*, 854 S.W.2d 584, 591 (Mo.App.1993); *State v. Fleer*, 851 S.W.2d 582, 592 (Mo.App.1993).

trial court's evaluations as to the weight of the evidence and the credibility of the witnesses. *Id. See also State v. Rodriguez,* 877 S.W.2d 106, 110 (Mo. banc 1994).

At the suppression hearing, the court considered the following evidence. Detective John Lucas of the Harrisonville Police Department testified that he played the audiotape for both Neal and Shaffer. He testified that they both identified the defendant's voice (voice number 3) as the man who committed the crimes at issue here. Furthermore, he testified that neither victim knew that "Anthony Dixon" was a suspect in the crimes until after they had listened to the audiotape and identified the defendant's voice. Shaffer testified, at the hearing, that he identified the defendant's voice from the audiotape (in addition to his picture from an array of photographs) and that he did not know the defendant's name until after he had identified him. Neal also testified that she did not know that "Anthony Dixon" was the suspect until after she had identified his voice. We conclude that the audiotaped identification of the defendant's voice was not impermissibly suggestive, and its admission was supported by sufficient evidence. It is not a reviewing court's "province to substitute its discretion for that of the trial court." *Rushing,* 935 S.W.2d at 32 (citations omitted). Point denied.

■ Finally, the defendant asserts that the motion court erred in denying his Rule 29.15 motion in that his trial counsel was ineffective in failing to file a notice of his intent to pursue an alibi defense with the state, pursuant to Rule 29.15. The defendant claims that such failure precluded the defendant from testifying in his own behalf since his only real defense was his whereabouts at the time the crimes were committed. However, in light of our decision that defendant agreed that he would not testify, and that the defendant's trial counsel's decision not to employ an alibi defense was based on sound strategy as discussed *supra,* counsel's failure to file a notice of intent to rely on an alibi defense was proper. Accordingly, this point must also be denied.

Judgments of conviction and denial of the Rule 29.15 motion are affirmed.

LAURA DENVIR STITH, P.J., and RIEDERER, J., concur.