STATE of Missouri, Respondent,

v.

Edwin Lee DAVIS, Appellant.

No. WD 49717.

Missouri Court of Appeals,
Western District.

May 9, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 27, 1995.

Application to Transfer Denied
Sept. 19, 1995.

J.D. Williamson, Jr., Independence, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Kocot, Asst. Atty. Gen., for respondent.

Before FENNER, C.J., P.J., and BRECKENRIDGE and HANNA, JJ.

FENNER, Chief Judge.

Appellant, Edwin L. Davis, appeals from the trial court's denial of his motion to dismiss based on speedy trial grounds and his motion for judgment of acquittal based on an insufficiency of evidence.

The evidence in the record reveals that Davis was charged by indictment on May 11, 1992 with Count I, deviate sexual assault in the first degree, § 566.070, RSMo 1986; Count II, sexual assault in the first degree, § 566.040, RSMo 1986; and Count III, deviate sexual assault in the first degree, § 566.070, RSMo 1986. Davis was arraigned and released on bond.

The State was granted trial continuances on August 24, 1992, September 10, 1992 and October 15, 1992, while awaiting results of DNA analysis. The initial indictment was later dismissed on April 15, 1993.

On May 27, 1993, the State refiled the same charges against appellant by information. Davis filed his first motion to dismiss on speedy trial grounds at this time. The motion was overruled, and the State was granted additional continuances on July 8, 1993, August 20, 1993, October 18, 1993 and November 23, 1993, alleging on each occasion that the request was necessitated by delays in receiving results of a second DNA analysis. Davis renewed his motion to dismiss on speedy trial grounds on November 23, 1993; this motion was also denied.

Appellant's counsel received a copy of the DNA analysis report from the State in mid-December 1993, and thereafter filed a motion to exclude it from evidence. This motion was denied, resulting in a request for a continuance from appellant in order to prepare an adequate defense to the DNA evidence. This motion was granted. The matter went to trial on May 23, 1994. Appellant renewed his motion to dismiss on speedy trial grounds before trial and again at trial within his

motion for judgment of acquittal. All were denied by the trial court.

After trial by jury, appellant was convicted on Count III, but acquitted on Counts I and II of the information. Appellant was ultimately sentenced to 365 days in the county jail on Count III.

Because one point of error raised by appellant is a challenge to the sufficiency of the evidence for his conviction on Count III, a brief review of the facts surrounding the case is necessary. In reviewing the facts, we accept as true all the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Patterson*, 806 S.W.2d 518, 519 (Mo. App.1991).

The victim, 14 year old C.B., and her family were friends of appellant and his wife. C.B. and appellant's relationship was a close one, resulting in C.B. referring to appellant on occasion as Uncle Ed. C.B. and her mother were visiting her stepfather at Fort Leavenworth and staying with appellant at the time of the alleged assaults. C.B. and her mother arrived late on Friday evening at appellant's residence while appellant was working the night shift as a Jackson County Deputy Sheriff.

Appellant arrived home from work Saturday morning shortly after C.B. woke up. C.B.'s mother and stepfather left the house shortly thereafter, as did appellant's wife. Appellant had retired to his bedroom to sleep while C.B. was watching television. Some time later, appellant called out to C.B. asking her to come to his room and give him a back rub, to which she complied. C.B. then left appellant's room and resumed watching television.

A short time later, appellant called C.B. into his room to talk. C.B. dozed off as they were talking. C.B. testified that when she awoke, appellant was lying on top of her naked and telling her that he "wanted to make her feel good." Thereafter, appellant pushed up C.B.'s nightshirt and moved the crotch area of her underwear to the side of her leg. C.B. stated that appellant touched her vaginal area with his hand and penis and

that she noticed that her vaginal area and the upper part of her underwear were warm and wet. These allegations formed the basis of Count I against appellant.

When this event was complete, C.B. took a shower and dressed, segregating the underwear she had been wearing from the rest of her clothes in her travel bag. She talked to a friend on the phone for approximately 45 minutes, explaining what had happened, then returned to watching television.

A short time later, appellant emerged from his bedroom and asked C.B. to go back in the bedroom with him, which C.B. refused. When C.B. attempted to get past appellant to the bathroom, he took her by the arm and pushed her backwards into his bedroom and onto the bed. Appellant unbuttoned C.B.'s jeans and removed the right leg of her jeans and underwear. Appellant grasped C.B.'s hands, pulling them down and placing them on his penis. These actions served as the basis for Count III of the information.

C.B. testified that after appellant placed her hands on his penis, she quickly removed them. Thereafter, appellant proceeded to have sexual intercourse with her. When appellant finished, C.B. felt wetness on her upper thigh and vaginal area. These alleged acts served as the basis for Count II of the information. C.B. then went to the bedroom, cleaned herself off with a tissue, and dressed. C.B. then fled the residence without shoes or socks and began running to a neighbor's house.

While running to the neighbor's house, C.B. saw Brandalyn Ott and Julie Johnston driving by and flagged them down. Ott testified that C.B. told them she had been raped and asked to be taken to the police station. Ott also stated that C.B. appeared upset and was shaking, that her hair was messed up, and that she began crying. C.B. was taken to the Oak Grove Fire Department where she spoke to Officer Judy Ross, who then took her to Children's Mercy Hospital.

Dr. Mark Eddy treated C.B. at Children's Mercy. C.B. informed Dr. Eddy that she had been sexually assaulted. Dr. Eddy testified that his examination revealed tenderness in C.B.'s abdomen, cervix, and ovaries consis-

tent with sexual assault. Dr. Eddy also testified that an ultraviolet screening test revealed the presence of semen on the inner aspect of C.B.'s thighs and pubic area. DNA analysis later revealed that appellant's DNA was present in the semen taken from the underwear C.B. was wearing at the time of the first incident.

Appellant testified on his own behalf, stating that when he arrived home from work, he took some medication and went to bed. As usual, he wore no clothing while sleeping. Some time after dozing off, he awoke to find C.B. astride his body with his erect penis in her hand, pulling it toward her stomach and vagina. Appellant stated that he was shocked and instructed her to leave the room. When appellant went to the bathroom, he noticed that his penis was moist. Appellant testified that after he emerged from the bathroom, he had a brief conversation with C.B., then returned to his bedroom and slept until C.B.'s parents arrived home later that afternoon. Appellant denied that the events forming the basis for Count II and III occurred.

## I. SUFFICIENCY OF THE EVIDENCE

■ As stated earlier, in reviewing a claim challenging the sufficiency of evidence, we must determine whether the evidence is sufficient to support a conviction by viewing the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, disregarding all contradictory evidence and inferences. *State v. Davis*, 824 S.W.2d 936, 941 (Mo.App.1992). It is necessary only that there was sufficient evidence from which reasonable persons could have found defendant guilty as charged. *Id.* Questions of credibility of witnesses and the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury. *Id.* It is within the jury's province to believe all, some, or none of any witness's testimony in arriving at its verdict. *Id.* The testimony of one witness may be sufficient to sustain a conviction even if the testimony is inconsistent. *Id.* In cases involving sexual offenses, the victim's testimony will ordinarily sustain a conviction, even if uncorroborated. *Id. See also State v. Nelson*, 818

S.W.2d 285, 288 (Mo.App.1991); *State v. Hill*, 808 S.W.2d 882, 890–91 (Mo.App.1991); *State v. Dee*, 752 S.W.2d 942, 944 (Mo.App.1988).

■ In arguing that the evidence was insufficient to support his conviction of deviate sexual assault in the first degree on Count III of the information, appellant asserts that the "corroboration rule" was triggered and not satisfied. Though often discussed with disfavor, the Missouri courts recognize a limited exception to the general rule that a victim's testimony will ordinarily sustain a conviction even if uncorroborated, requiring corroboration of the victim's testimony when: (1) the defendant is charged with a sexual offense; (2) there are inconsistencies or contradictions bearing on an issue essential to the case; (3) the inconsistencies exist within the victim's own statements; and (4) the victim's testimony is rendered doubtful by the gross inconsistencies and contradictions. *Id.* This exception is known as the "corroboration rule."

■ The corroboration rule is triggered only when the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances, and common experience, that its validity is thereby rendered doubtful. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). The corroboration rule does not apply where the inconsistencies or contradictions are between the testimony of the victim and that of other witnesses. *State v. Gardner*, 849 S.W.2d 602, 604 (Mo.App.1993). Contradictions as to minor points of nonessential nature will not require corroborating testimony. *Id.* Conflicts of nonessential nature and issues regarding the credibility of witnesses are matters for the jury to determine. *State v. Nelson*, 818 S.W.2d 285, 289 (Mo.App.1991). Unless the testimony of the victim on an essential element leaves the mind "clouded with doubts," corroboration is not required. *A.S.B. v. Juvenile Officer*, 842 S.W.2d 234, 236 (Mo.App.1992).

For corroboration to be required in the case at bar, C.B.'s testimony and statements must be contradictory on one of the elements of first degree deviate sexual assault. Section 566.070, RSMo 1986, states that a person commits the crime of deviate sexual assault

in the first degree if he has deviate sexual intercourse with another person to whom he is not married and who is incapacitated or who is fourteen or fifteen years old. Deviate sexual intercourse is defined as any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person. § 566.010.1(2), RSMo 1986.

■ Appellant points to inconsistencies in C.B.'s testimony as to the time the alleged incidents occurred, the fact that there was no evidence of semen on the underwear C.B. was wearing at the time of the second incident or on the sheets that were on appellant's bed at the time of the incidents, and to his own testimony contradicting C.B. as grounds for invoking the corroboration rule.

■ Appellant's points of alleged contradiction are insufficient to trigger the corroboration rule. Appellant has alleged no contradictions within C.B.'s own testimony or statements related to the elements of the crime charged. There is no dispute as to C.B.'s age of fourteen years or to the fact that C.B. and appellant were not married. The alleged conduct of appellant placing C.B.'s hands on his penis falls within the definition of deviate sexual conduct. The only element remaining is the determination of whether the alleged conduct actually occurred. C.B.'s statements from the date of the alleged incident are consistent in their description of the alleged acts. Additionally, C.B.'s prompt complaint, first to Brandalyn Ott and then to the Oak Grove police, supports her testimony. *See State v. Harris*, 620 S.W.2d 349, 354 (Mo. banc 1981); *State v. Creason*, 847 S.W.2d 482, 485 (Mo.App.1993). As there are no inconsistencies within C.B.'s testimony as to any element of the charged crime, corroboration was not required.

■ As presented, appellant's argument is nothing more than an assertion that the State's testimony was not credible and that the jury should have believed his statements and not C.B.'s. The determination of these issues lies squarely within the province of the jury and such determination will not be disturbed where there is sufficient evidence to support the result. The jury's determination was supported by sufficient evidence as there

was no inconsistency within C.B.'s statements as to any element of the charged offense.

■ Additionally, appellant states that it is "simply inconceivable that, having found that appellant did *not* touch [C.B.'s] vagina with his hand (Count I) and did *not* have intercourse with her (Count II), any rational trier of fact could have found that he placed her hand upon his penis with intent to arouse sexual desire." This contention has no merit. Inconsistent verdicts among several charges require reversal only if there is insufficient evidence to support the jury's finding of guilt. *Davis*, 824 S.W.2d at 942. The situation presented by this case is similar to that in *State v. Doney*, 622 S.W.2d 227 (Mo.App. 1981), where the defendant was convicted on one count of rape and one count of deviate sexual intercourse, but acquitted on a second count of deviate sexual intercourse. The *Doney* court stated:

> While we acknowledge that all the evidence had a single source [the victim], we do not believe that reversal is required.... (citation omitted). "However much the jury's conclusion may tax the legally trained's penchant for consistency, the law is clear that inconsistent verdicts among the varied charges of a multi-count indictment are not self-vitiating.... [J]uries frequently convict on some counts and acquit on others, not because they are unconvinced of guilt but simply because of compassion, and compromise." *State v. McCall*, 602 S.W.2d 702, 708 (Mo.App. 1980).

622 S.W.2d at 229. There was sufficient evidence to support the jury's finding that appellant was guilty of deviate sexual assault in the first degree as described in Count III of the information. Point denied.

## II. SPEEDY TRIAL

Appellant claims the trial court erred in denying his numerous motions for dismissal for lack of a speedy trial, alleging that a 24 month delay from the time of the original indictment until the day of trial deprived him of his right to speedy trial guaranteed by Article I, § 18(a) of the Missouri Constitution

and the Sixth Amendment of the United States Constitution.

 The Sixth Amendment guarantees a defendant the right to a speedy trial. *State v. Fleer,* 851 S.W.2d 582, 595 (Mo.App. 1993). An instant or prompt trial is not guaranteed. *Id.* In deciding whether a defendant has been deprived of his speedy trial right, the Missouri Supreme Court adopted the method of analysis set forth by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *State v. Bolin,* 643 S.W.2d 806 (Mo. banc 1983). This analysis involves the balancing of four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to speedy trial; and (4) prejudice to the defendant. *State v. Raine,* 829 S.W.2d 506, 512 (Mo.App.1992). The application of these factors must be considered on a case-by-case basis. *Id.*

## A. LENGTH OF DELAY

Missouri courts have stated that a delay of eight months or longer is presumptively prejudicial, requiring examination of the three remaining factors that are part of the balancing test. *State v. Farris,* 877 S.W.2d 657, 660 (Mo.App.1994). The total length of pretrial delay from the time of indictment in this matter was 24½ months.

 In determining whether the delay was presumptively prejudicial, however, the delay attributable to the defendant's continuances, motions, or other actions must first be subtracted from the total delay. *State v. Thomas,* 625 S.W.2d 115, 125 (Mo. 1981). Appellant requested a continuance from January 21, 1994 until the trial date of May 23, 1994, a delay of approximately four months. Additionally, the one and one-half month period between the dismissal of the initial indictment and appellant's re-arraignment on the same charges is not considered in determining whether a Sixth Amendment speedy trial violation occurred. *See State v. Anderson,* 687 S.W.2d 643, 647 (Mo.App. 1985). Subtracting these amounts from the total delay, the amount of delay attributable to the State was approximately nineteen months. This delay is presumptively preju-

dicial requiring examination of the remaining three factors.

## B. REASONS FOR DELAY

 Pretrial delay is often both inevitable and wholly justifiable. *Farris,* 877 S.W.2d at 660 (quoting *Doggett v. U.S.,* 505 U.S. 647, 657, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520 (1982)). Different weights in the balancing process are assigned to different reasons for delay. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. Delays deliberately intended to hamper the defense are weighed heavily against the State. *Raine,* 829 S.W.2d at 512 (*citing State v. White,* 689 S.W.2d 699, 703 (Mo.App.1985)). Delays attributable to the State's negligence or overcrowded court dockets are weighed less heavily against the State. *Id.* Delays for valid reasons, such as unavailability of witnesses, are justified and are not weighed against the State. *Id.*

 Though the State was responsible for nineteen months of the pretrial delay in the case at bar, this delay was created by the time consuming DNA testing on which the State was basing its case. DNA analyses were performed by two different laboratories. Nothing in the record indicates bad faith or negligence on the part of the prosecuting attorney. However, it is the ultimate duty of the State to bring the accused to trial. *State v. Smith,* 849 S.W.2d 209, 214 (Mo.App.1993). State caused delay, even where there is no deliberate attempt to delay the trial or hamper the defense, weighs against the State. *State v. Bohannon,* 793 S.W.2d 497, 504 (Mo.App.1990). This factor is weighed against the State, but not heavily.

## C. ASSERTION OF THE RIGHT TO SPEEDY TRIAL

 Although a defendant is not required to bring himself to trial, failure to assert the right to speedy trial will make it difficult for the defendant to prove he was denied a speedy trial. *Farris,* 877 S.W.2d at 662. A formal request is required to assert the right to speedy trial. *Id.*

 Appellant first asserted his right to speedy trial by motion on May 27, 1993,

approximately eleven months after he was indicted. Though the majority of the overall delay in bringing appellant to trial is chargeable to the State, it is attenuated by appellant's delay in asserting his right. *Bohannon*, 793 S.W.2d at 504. This factor is weighed neither for nor against either party.

### D. PREJUDICE TO THE DEFENDANT

 This is the most important factor in the speedy trial analysis and must be assessed in light of the interests protected by the right: (1) prevention of oppressive pretrial imprisonment; (2) minimization of the defendant's anxiety and concern; and (3) limitation of the possible impairment of the defense. *State v. Darnell*, 858 S.W.2d 739, 745–46 (Mo.App.1993). The most important of these is the last—whether the delay prejudiced the defendant's ability to make a defense. *Id.* To require reversal, any claimed prejudice resulting from delay must be actual prejudice apparent on the record or by reasonable inference. *Id.*

The interest in the prevention of oppressive pretrial imprisonment protected by the right to speedy trial has no role in this case, as appellant was not imprisoned in anticipation of trial. There is evidence, however, that the extended delay created considerable anxiety and concern for appellant, as he was suspended without pay from his job and unable to find other employment. As to the most important issue of whether appellant's defense was impaired, there are no allegations that witnesses disappeared or became otherwise unavailable or that evidence was lost so as to prevent defendant from providing a defense.

Though appellant's contentions as to the anxiety and concern the pretrial delay caused as well as his resulting inability to find employment and financial stress may be true, the lack of actual prejudice to his ability to make a defense is of greater importance. The fourth and most important factor in the *Barker* analysis is weighed against defendant.

 Based upon an evaluation of the four *Barker* factors, it is evident that appellant's

Sixth Amendment right to speedy trial was not violated. Though the length of the delay was presumptively prejudicial, there was good reason for the delay and appellant was not prejudiced in his ability to make a defense by the delay. Point denied.

The judgment of the trial court is affirmed in all regards.

All Concur.