**STATE of Missouri, Respondent,**

v.

**Michael D. IVESTER, Appellant.**

No. 71745.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 21, 1998.

Rehearing Denied Nov. 16, 1998.

Gregory R. Futhey, Lake St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Michael Ivester, appeals from judgments of conviction, after a jury trial, for forcible rape, forcible sodomy, and felonious restraint. He was sentenced to consecutive prison terms of two life sentences and seven years respectively. We affirm.

On appeal, defendant does not challenge the sufficiency of the evidence to support his convictions. On December 3, 1993, defendant arrived home around 6:00 p.m. His wife was there when he arrived. Defendant had been drinking. He became violent and began to destroy the furniture and the interior of the home. He beat his wife repeatedly

and threatened to kill her. He struck their two-year old child while his wife was holding him. He laughingly told his nine-year old stepson who was present that he was going to kill his mother. The stepson bravely attempted to protect his mother but failed. Defendant continued to beat his wife, then took her to the bedroom and forcibly sodomized her and forcibly raped her twice. His announced justification was that she was his wife and therefore he could do whatever he wanted to do.

Wife was finally able to leave her home in the early morning of December 4, 1993. She drove to the police station and arrived there at approximately 5:30 a.m. Within thirty minutes of her arrival at the station, officers went to the residence and placed defendant under arrest. Defendant has been in custody since that day.

The state charged defendant in an amended information with forcible rape, forcible sodomy, and felonious restraint. He was arraigned on March 7, 1994. Trial was originally set for May 12, 1995, seventeen months after defendant was jailed. On May 4, 1995, the state filed a request to endorse additional witnesses. Following this request, the case was continued. The parties discussed a guilty plea on one charge. On May 12, 1995, with the consent of the state, defendant requested a "continuance for a plea of guilty on May 19, 1995." The parties did not reach an agreement for a plea because the attorneys held opposing views on which charge would be the subject of the plea. On May 19, 1995, the "cause [was] continued to be re-assigned." On June 9, 1995, an amended information was filed.

Two months later, on August 16, 1995, defendant filed a motion to dismiss for failure to provide a speedy trial or, in the alternative, a request for a speedy trial. The trial court denied the request to dismiss and the trial did not commence until March 12, 1996. On August 24, 1995, both the state and defendant requested a priority trial setting. The trial court record does not explain or justify the delay from August 1995, to the trial on March 12, 1996. During trial, defendant did not testify or present any evidence. He continued to assert his speedy trial rights

were violated. The jury returned guilty verdicts on all three counts. Defendant's motion for new trial was denied and the court sentenced defendant. Defendant raises two points on appeal.

Defendant first argues the trial court erred in denying his motion to dismiss because a *twenty-seven month delay from his arrest to trial* deprived him of his right to a speedy trial guaranteed by the United States Constitution and Missouri Constitution. The state responds that defendant was brought to trial in an orderly and expeditious manner and that defendant was not prejudiced by the delay.

The Sixth Amendment to the United States Constitution and Art. I, section 18(a) of the Missouri Constitution guarantee a criminal defendant the right to a speedy trial. *State v. Fleer,* 851 S.W.2d 582, 595 (Mo.App. E.D.1993). To determine whether a defendant has been denied his constitutional right to a speedy trial, Missouri has adopted the balancing process set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *State v. Bolin,* 643 S.W.2d 806, 813–16 (Mo. banc 1983). The process requires the balancing of four factors: (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to defendant. *State v. Davis,* 903 S.W.2d 930, 936 (Mo.App. W.D.1995).

The first factor is actually a double inquiry. *Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 2690, 120 L.Ed.2d 520 (1992). Initially, we examine the length of delay to determine if the delay is ordinary or presumptively prejudicial. A further inquiry into the remaining factors is required only if the delay reaches a level presumed to be prejudicial. If the length of delay is not presumptively prejudicial, the request for dismissal may be denied without explaining or weighing the remaining factors. *State v. Farris,* 877 S.W.2d 657, 659–60 (Mo.App. S.D.1994). The presumption that pretrial delay prejudices defendant increases over time, and we must again examine the length of delay when analyzing prejudice to the defense, a consideration in the fourth factor

of the *Barker* analysis. *Doggett*, 505 U.S. at 652, 112 S.Ct. at 2691.

■ ■ Defendant was arrested on December 4, 1993, but was not tried until March 12, 1996. The length of delay totaled more than twenty-seven months. A delay of eight months or longer is presumptively prejudicial and therefore an examination of the remaining three factors is necessary. *Farris*, 877 S.W.2d at 660.

A delay of three and one-half times the period creating a presumption of prejudice is alarming especially when we consider the time frames and standards for case processing set forth by our Supreme Court in Administrative Rule 17.23.[1] Even though the rule went into effect after this trial, it establishes a standard for what is considered tolerable pretrial delay on a felony charge. The time frames and standards for circuit court felonies are fifty percent processed in four months, ninety percent disposed of in eight months, and ninety-eight percent completed in twelve months. A twenty-seven month delay for a defendant incarcerated in a county jail is wholly incompatible with the Supreme Court standards, particularly where the delay is unexplainable. The length of delay is strong support for defendant.

■ Furthermore, defendant was in custody in the St. Charles County jail for all twenty-seven months before he was tried. There were no other charges pending, no missing witnesses for the state, and defendant was not undergoing mental examinations. There simply was no excuse for this case not to go to trial. The victim, wife, not only underwent the trauma of the events of December 3 and 4, 1993, but also suffered the stress of waiting twenty-seven months for the uncertainty to end. The second factor to consider is the reason for the delay. Different weights are assigned to the different explanations given for the delay. Delays deliberately intended to harm the defense are weighed heavily against the state. *State v. Raine*, 829 S.W.2d 506, 512 (Mo.App.1992). Delays attributable to the state's negligence or overcrowded court dockets are weighed against the state, although weighed less heavily. *Id.* Delays for valid reasons are justified and not weighed against the state. *Id.* Delays attributable to defendant weigh heavily against defendant. *State v. Darnell*, 858 S.W.2d 739, 745 (Mo.App. W.D.1993). However, "it is ultimately the duty of the state to bring a defendant to trial." *Bolin*, 643 S.W.2d at 814(citing *Barker*, 407 U.S. at 527, 92 S.Ct. at 2190).

■ There is no claim the court or the prosecutor deliberately delayed the trial to hamper the defense. However, the state has no reasonable explanation to justify the long delay between defendant's arrest on December 4, 1993, and defendant's trial on March 12, 1996. Both parties were equally responsible for the few weeks of delay attributed to a plea negotiation. It was granted with consent of the state. Except for that period of time, the state has no explanation for the failure of the trial court to set and try the case. It suggests, without any citation, an overcrowded court docket may have been the reason. It requested five trial settings. The court granted one, for May 19, 1995, before the trial setting of March 12, 1996. There is nothing in the record to support a finding St. Charles County was so burdened with cases between December 1993, and March 1996, that it could not try three serious, related felonies where the trial lasted three days. While a neutral explanation such as overcrowded dockets is weighed less heavily against the state, it is still ultimately the state's duty to bring the defendant to trial. *Fleer*, 851 S.W.2d at 596. Here, there is no explanation. This factor weighs against the state.

■ The third factor evaluates the timing of defendant's assertion of his right to a speedy trial. Although defendant has no affirmative duty to bring himself to trial, failure to assert his right to a speedy trial makes it difficult for defendant to prove he was denied a speedy trial. *Davis*, 903 S.W.2d at 936. Defendant must make a formal request to assert his right to a speedy trial. *Id.*

■ Defendant formally asserted his right to a speedy trial on August 16, 1995, approxi-

---

1. Administrative Rule 17.23 was adopted in July 1996, and became effective January 1, 1997.

mately twenty months after his arrest and detainment. As in *Davis*, the overall pretrial delay before and after defendant's motion for speedy trial is primarily attributable to the state. In *State v. Davis*, 903 S.W.2d 930 (Mo.App. W.D.1995), and *State v. Woodworth*, 941 S.W.2d 679 (Mo.App. W.D.1997), it took eight and seven months respectively for the defendants to receive a trial after they asserted their right to a speedy trial. These cases found that this factor should not be weighed for or against the state or defendant because of the delay by defendant in asserting his right. In *Davis*, the state provided specific reasons to justify or explain the delays. *Davis*, 903 S.W.2d at 936. Additionally, after the defendant formally asserted his right to a speedy trial, he caused four months of the additional delay. *Id. Woodworth*, relies on *Davis* for the proposition that this factor is not weighed for or against the state because defendant waited so long to assert his right. *Woodworth*, 941 S.W.2d at 694. The present case is distinguishable. In *Woodworth*, the multiple charges which required complicated evidence tend to explain a seventeen month period from charge to trial. Here, we are reviewing a three-day trial. The evidence to support findings defendant committed the charged crimes was essentially the testimony of one prosecuting witness. This case is also distinguished by the complete absence of any explanation why the trial court would not provide a trial on the request of defendant for a speedy trial and a priority trial, particularly where the state also requested priority setting. *See Raine*, 829 S.W.2d at 513. On these facts, the failure to honor or explain a dishonor of the request weighs against the state.

■ Lastly, we must weigh what is considered the most important of the four factors, prejudice to defendant. This factor is examined in light of three considerations: (1) prevention of oppressive pretrial imprisonment; (2) minimization of defendant's anxiety and concern; and (3) limitation of the possible impairment of the defense. *Fleer*, 851 S.W.2d at 597. The most important of these considerations is the last. *Bolin*, 643 S.W.2d at 816.

■ As to the last consideration, defendant argues that due to the long delay he was unable to testify and this defeated his ability to provide a defense. In discussing this consideration, defendant fails to specify why he was unable to testify. Resulting prejudice cannot be speculative or possible prejudice. *See State v. Edwards*, 750 S.W.2d 438, 442 (Mo. banc 1988). Defendant did contend in discussing the second prejudice consideration that the anxiety and concern resulting from his pretrial incarceration culminated in him being unable to testify. He fails to assert and it is unclear why anxiety and concern prevented him from testifying. "Undoubtedly, anxiety and concern exist in every criminal case." *Fleer*, 851 S.W.2d at 597. However, that alone does not establish prejudice where the defendant neither asserts nor shows that the delay weighed particularly heavily on him or her in specific instances. *Id.* In addition, defendant's contention is contrary to the statements he made that are quoted below.

Relying on *Doggett*, defendant also argues that his less specific or speculative claims of prejudice should be weighed in his favor and against the state. In *Doggett*, the defendant was indicted on February 22, 1980 and shortly thereafter left the country. *Id.* at 648–49, 112 S.Ct. at 2688–89. The defendant returned to the United States in September 1982 but was not arrested until September 1988. *Id.* at 649–50, 112 S.Ct. at 2688–90. The defendant moved to dismiss the indictment, arguing that his Sixth Amendment right to a speedy trial had been violated. *Id.* at 650, 112 S.Ct. at 2689–90. The defendant's motion was denied and the Court of Appeals affirmed. *Id.* at 650–51, 112 S.Ct. at 2689–90.

On appeal, the Government's principal contention was that the defendant could not prevail on a speedy trial claim because he did not show precisely how he was prejudiced by the delay between his indictment and trial. *Id.* at 654, 112 S.Ct. at 2692. The Court stated that *Barker* recognized that impairment of a person's defense "is the most difficult form of speedy trial prejudice to prove . . . ." *Id.* at 655, 112 S.Ct. at 2692. The Court also stated that negligence in

bringing an accused to trial is not "automatically tolerable simply because the accused cannot exactly demonstrate exactly how it prejudiced him." *Id.* at 656–57, 112 S.Ct. at 2693. In reversing the judgment, the Court held that when the Government's negligence caused a delay six times as long as that generally sufficient to trigger judicial review which depending on the charges is generally one year, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief. *Id.* at 658, 112 S.Ct. at 2694.

Under *Doggett,* detailed proof of prejudice may not be necessary. Here, the state's inability to bring defendant to trial was almost three and one-half times as long as what our courts consider sufficient to trigger the complete *Barker* inquiry. The delay here, however, is not as egregious as that in *Doggett.* Regardless, assuming without deciding that in this case there is a presumption of prejudice, we look to the record to see if that presumption is rebutted.

Defendant did not testify at trial. At sentencing, however, he requested permission to make a statement to the court prior to imposition of sentence. The trial court granted defendant's request and after being sworn he stated:

MR. IVESTER: I just want to say that above everything and all, I have no excuses whatsoever for my actions on the night that—that—that the events occurred. And I'm not rebelling and I'm not trying to hide.

I want the Court to know that there is no excuse for adult abuse at all, or any kind of abuse. And I've spent the last three years completely and fully broken. I've just—I've looked inside and I've investigated fully my past life and then my marriage life and where I'm at today, and I have absolutely no excuses whatsoever. And also, there is no reason for me or anyone else to try to force their will on anyone for any reason. I'm thankful for the three years that I have been granted in—to be able to look inside and to look at things and to see the things the way they are. And I acknowledge that I have been completely a failure in maintaining a lifestyle of wholeness.

. . . .

And I—I have cried and cried and cried and cried because of the things I've done. And I've sincerely and honestly sought information and knowledge. I've completely sanctified myself in the jail.

. . . .

And I want to thank [defendant's attorney] for really going out for me in the way that he has with the Court. There's so much I could say, Your Honor. There's so much I want to say, but I don't have the time to sit here and try to—try to put it all within this few hours, or whatever time. All I know to say is, this past three years I've—I've come to complete brokenness, and I'm totally remorseful for the events that ha[ve] taken place.

THE COURT: Is there anything you want to say to her?

MR. IVESTER: [Defendant's wife], I'm sorry. I'm totally sorry. I have no excuses for what I've done in my life. And I have no excuses for what I've done to you or to your family. There are no excuses. I'm an individual that had problems. I had no right to try to force my will upon you or to anyone else. And I want you to know that I'm not a threat to you, not at all. I am never going to ever be a threat to anyone ever again in my life no matter what. And I want you to know that I am totally sorry for the events that I've done—for the things that I've done.

[Father in-law], I'm sorry. I'm sorry for the things that I've done. I'm totally— The past three years has totally broken me into pieces. I have sought the information and I know what I need to do for the rest of my life. I know what I've done. I'm not hiding it and I'm not rebelling. I know what my potentials are for good and I know what my mistakes were.

. . . .

MR. IVESTER: I'm totally—totally, completely—completely broken about the whole thing. And I'm not denying to you [the trial judge] or to [wife] or to no one that I am without guilt of anything. I'm

an individual, Your Honor. I know there's a lot of domestic violence out there and I know that there has to be things done about it. I've listened for three years I have paid and I know that I've got to pay. I know that I'm paying right now this moment today.

After defendant completed his statement, the victim made a statement to the court. *See* Section 557.041.2 RSMo 1994. The court then granted allocution and imposed sentence. After sentence was imposed, the trial court questioned defendant regarding his legal representation:

> THE COURT: Are you fully and completely satisfied with the services that [attorney] has rendered you in this case?
>
> MR. IVESTER: Yes.
>
> THE COURT: Has he investigated your case fully?
>
> MR. IVESTER: Yes.
>
> THE COURT: Has he interviewed all possible witnesses?
>
> MR. IVESTER: Yes.
>
> . . . .
>
> THE COURT: Do you have any complaint of any kind whatsoever that you would make against [your attorney] ? If you do, now would be the time to make it, not later.
>
> MR IVESTER: No, I'm not complaining about [my attorney].

Defendant, by his statements, admitted his wrong doing, offered no excuse, and apologized to his wife. In addition, he was thankful for his lengthy pretrial incarceration because it permitted him to begin to rehabilitate himself mentally and spiritually.

As to prejudice to his defense, defendant stated he had no excuses, his case was investigated fully by his attorney, his attorney interviewed all possible witnesses, and he was completely satisfied with his attorney's representation. We find that even if there was a presumption of prejudice in this case, that presumption is persuasively rebutted by defendant's own statements. Defendant first point is denied.

No jurisprudential purpose would be served by addressing in a written opinion defendant's second point, and this point is denied. Rule 30.25(b).

The judgments of conviction are affirmed.

AHRENS, P.J., concurs.

KAROHL, J., dissents in separate opinion filed.

KAROHL, Judge, dissenting.

I respectfully dissent. The trial court denied defendant's motions to dismiss the charges because the state denied him a speedy trial. The United States and Missouri Constitutions guarantee a speedy trial. The state kept defendant in the St. Charles County Jail for twenty-seven months before a three-day trial. There are no facts which support a finding that there was any cause or excuse for denying defendant a speedy trial. The only issue for this court is whether the trial court erred when it overruled defendant's motions before the trial.

The review of this constitutional issue was defined in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); and, *State v. Bolin,* 643 S.W.2d 806 (Mo. banc 1983). That review is directed at the ruling when made. So long as a defendant retains his constitutional rights, nothing which occurs during an unconstitutional trial in violation of those rights is relevant to the review. Otherwise, no court would be required to rule, and no court would rule, on this issue until after sentencing. There is no legal authority to support a contrary conclusion. In this case the state had a full opportunity to justify the delay and offer the court facts to support findings that negate adverse findings on the relevant factors. If all of those factors were unfavorable to the state before the trial, then the trial court erred, and the trial was unconstitutional. An event which occurred after the trial cannot make constitutional what was unconstitutional before it began. The majority opinion will send a message that speedy trial motions will not be decided until after a trial, or worse, after sentencing. It is likely this will become a persistent issue on appeal. If twenty-seven months of unexplained pre-trial incarceration before the trial is not a denial

of constitutional rights solely because of defendant's statements at a sentencing hearing, then the length of pre-trial incarceration is incidental to the decision on these motions. Every word of the opinion could be the same for a defendant held seven years if that was the only factual difference.

It is agreed that the three factors of length of delay, reason for delay, and defendant's assertion of his right to a speedy trial strongly support defendant's motions to dismiss. On the fourth factor, actual prejudice, there is agreement on the presumption of prejudice which compounds over time as the presumption of evidentiary prejudice grows. "When the government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, ... and when the presumption of prejudice, albeit *unspecified,* is neither extenuated, as by the defendant's acquiescence, ... nor persuasively rebutted, the defendant is entitled to relief." *Doggett,* 505 U.S. 647 at 658, 112 S.Ct. 2686 at 2694. (Emphasis added). On the issue of actual prejudice there would be no disagreement if the review was directed at the trial court's ruling, when made. The state offered no facts to support a finding of no actual prejudice at the time of the ruling. It made no effort to rebut the presumption of prejudice. There is no disagreement that for two of the three approved considerations on the issue of actual prejudice, prevention of oppressive pre-trial imprisonment and minimization of defendant's anxiety and concern, defendant was actually prejudiced. We disagree only on whether the third consideration, which we define as prejudice to the defense, was rebutted.

In *Doggett,* the defendant was charged for a number of years, but not arrested or incarcerated. In our case, defendant was incarcerated for the delay period and always maintained his innocence. Doggett entered a guilty plea, subject only to error in overruling motions to dismiss. The United States Supreme Court reversed after rejecting the government's principal contention that the defendant could not show "precisely how he was prejudiced by the delay between his indictment and trial." *Id.* at 654, 112 S.Ct. at 2692. The court said, "consideration of prej-

udice is not limited to the specifically demonstrable, ... affirmative proof of particularized prejudice is not essential to every speedy trial claim.... [T]hus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify." *Id.* at 655–656, 112 S.Ct. at 2692–93. *Doggett* will not support the proposed observation in the majority opinion that "detailed proof of prejudice may not be necessary." The court said and held it is not necessary. It did so in a case where defendant pled guilty. Finally, the court held "the Government's egregious persistence in failing to prosecute Doggett is clearly sufficient." *Id.* at 657, 112 S.Ct. at 2694. The disagreement in this case narrows to a finding of no actual prejudice from the delay.

If we assume, without legal precedent or authority, that the statements defendant made after the trial are relevant, they were not a waiver of a lost right or a retraction of a claim of actual prejudice. This assumption is in conflict with the result in *Doggett. Doggett* teaches us that protecting the right of every citizen to a speedy trial is an obligation of the courts which is entirely separate from defendant's guilt or innocence. The Supreme Court rejected the notion that a guilty plea to the charge removed any possibility of actual prejudice. Defendant's statements at sentencing will not support a finding he was guilty of the charged crimes. At most, his statements support finding he: (1) acknowledged his fault for a troubled relationship; and, (2) did not claim his trial attorney was ineffective. He was referring to the trial attorney who asserted and preserved his constitutional rights to a speedy trial. His statements do not oppose or conflict with his claims of prejudice because of lost memory or an inability to call a missing witness. These specifications were before the court when he presented his motions to dismiss. Even if a detailed specification is not required in every speedy trial claim, as said in *Doggett,* 505 U.S. at 665, 112 S.Ct. at 2692–93, defendant provided specifications. He told the court he could no longer remember the names of potential witnesses. There was a witness who could not be located because he or she had moved or changed phone num-

bers during defendant's pre-trial incarceration. These specifications were unchallenged. It should be noted the prosecutor joined defendant in requesting a priority trial setting. The unexplained delay was not the fault of a prosecutor who tried to protect defendant's constitutional rights. This may explain why the presumption of prejudice cannot be rebutted by the state.

Defendant's statements at the sentencing did not conflict with these specified grounds. He had "no excuses." He was "fully broken." There was no reason for "me or anyone else to force their will on anyone for any reason." He acknowledged "that I have been completely a failure in maintaining a life style of wholeness." He cried and cried for the things he had done; he thanked his attorney "for really going out for me." He had no excuses for what he had done to his wife or her family. He did not deny he was without guilt of anything. He has paid and knows he has "got to pay." Individually or collectively, these statements do not constitute a plea of guilty to the charged crimes. Hence, they are less relevant than Doggett's plea of guilty. They do not address and they wholly fail to provide grounds to rebut his unchallenged specifications of actual prejudice. On the contrary, they support a finding that defendant was "totally, completely— completely broken about the whole thing." In context, he was speaking generally and summarizing his condition after the extended, unjustified pre-trial incarceration which was punitive, unjust and unconstitutional.

"The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused.... [T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker v. Wingo*, 407 U.S. at 519, 92 S.Ct. at 2186. An affirmance in the present case will diminish every citizen's constitutional rights; it approves denying a speedy trial to a defendant who pled not guilty and maintained his innocence of the charged crimes. It cannot be harmonized with *Doggett*, the latest controlling decision of the United States Su-

preme Court, on a federal constitutional issue because: (1) the delay was uncommonly long; (2) defendant was free of any blame for the delay; (3) he asserted his constitutional right to a speedy trial; and, (4) the state failed to offer any acceptable explanation or excuse.

Defendant and his defense were actually prejudiced as a result of the delay. The strong, unrebutted presumption of prejudice is supported by unopposed specifications of actual prejudice. Thus, all four factors in *Barker* and *Bolin* are heavily weighed against the state. We are obligated to reverse and remand with direction to dismiss.