STATE of Missouri, Plaintiff–
Respondent,

v.

Michael A. WILLIAMS, Defendant–
Appellant.

No. 23085.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 4, 2001.

Irene C. Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Susan K. Glass, Assistant Attorney General, Jefferson City, for respondent.

PARRISH, Presiding Judge.

Michael A. Williams (defendant) appeals his convictions, following a jury trial, of

1. References to statutes are to RSMo 1994.

2. Mr. Fiedler explained that the store "was an appointment-only jewelry store." A customer would make an appointment. Mr. Fiedler would find out what the customer was interested in and put together a tray of jewelry for

robbery in the first degree, § 569.020, and armed criminal action, § 571.015.[1] This court affirms.

In 1998 Rick Fiedler owned a jewelry store in Springfield, Missouri. The name of the business was Jewelry Marketing. Mr. Fiedler purchased the business in February 1998 from Roy Wolfinbarger and Jeanie Wolfinbarger. Sometime after Mr. Fiedler purchased the business, Ricky Choate came to the store and inquired about buying jewelry. Mr. Fiedler and Mr. Choate met one or two more times before March 31.[2] Mr. Choate scheduled an appointment for the morning of March 31. Mr. Choate showed up about 11:00 a.m. Defendant was with him. They went to the sales office in the rear of the store. Mr. Choate asked Mr. Fiedler whether he had certain types of jewelry. Mr. Fiedler showed him various jewelry items he had removed from his safe.

Mr. Choate asked about a Rolex watch. Mr. Fiedler went back to the safe. He explained, "And I was leaned over picking up this Rolex watch when a gun came by the door and pressed into my ribs. And he told me don't move, I've got a gun." Ricky Choate was the one holding the gun.

Rick Fiedler's hands and feet were tied. Defendant and Choate went through the safe emptying the jewelry trays. Mr. Fiedler told the trial court and jury that before the two men left with the jewelry, they took a nylon tie device and "zipped in down" against his neck. He said it cut off his air. He explained, "Well, they headed for the door. And as soon as I heard the door knob move, I started trying to get loose because I couldn't breathe."

Mr. Fiedler got his hands free. He held the nylon strip away from his neck so he could breathe and went to his office and

the customer to see. Mr. Fiedler told the trial court and jury, "[W]e would have more or less what you were looking for pulled out of our safe or the safety deposit boxes. And then it was a one-on-one meeting."

hit a silent alarm on the side of his desk. Security personnel came to the door. He went to the door and let them in.

Defendant's brief sets out five points on appeal. A footnote to Point V states, "This point submitted *pro se* by [defendant]."

■ "[A] defendant in a criminal case has a constitutional right under the Sixth and Fourteenth Amendments to represent himself and waive counsel." *Henderson v. State,* 786 S.W.2d 194, 197 (Mo.App.1990), *citing Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A criminal defendant, however, has no right to hybrid representation, a combination of self-representation and assistance of counsel. *State v. Williams,* 681 S.W.2d 948, 951 (Mo.App. 1984), *citing U.S. v. Weisz,* 718 F.2d 413, 426 n. 72 (D.C.Cir.1983). *See also State v. Hurt,* 931 S.W.2d 213, 214 (Mo.App.1996); *State v. Harris,* 669 S.W.2d 579, 582 (Mo. App.1984).

■ The determination of what legal issues are appropriately presented in an appeal of a criminal case is a decision for counsel. It is not a decision that reposes with the defendant.[3] This court perceives no reason to address an appellant's *pro se* point on appeal when that appellant is represented by counsel. To do so would be to permit hybrid representation. Defendant's appellate counsel had the opportunity to review the issue set forth in Point V. Had she believed it meritorious, she, as defendant's counsel, would have pursued it. This court declines to consider the *pro se* point. Point V is stricken.

■ Point I is directed to a jury instruction tendered to the trial court on behalf of defendant. The trial court refused to give the instruction. It was marked "Instruction No. A" and filed without being read or otherwise given to the jury. It states:[4]

### INSTRUCTION NO. *A*

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 31st day of March, 1998, in the County of Greene, State of Missouri, the defendant or Ricky Choate took a Rolex watch, a diamond and gold ring, a marquis solitaire diamond ring, and other assorted gold and diamond jewelry, which was property in the charge of Rick Fiedler, and

Second, that defendant or Ricky Choate did so for the purpose of withholding it from the owner permanently,

and

Third, that defendant or Ricky Choate in doing so used physical force or threatened the immediate use of physical force on or against Rick Fiedler for the purpose of preventing resistance to the taking of the property,

and

Fourth, that defendant did not honestly believe that he had a right to take such property,

and

Fifth, that in the course of taking the property, the defendant or Ricky Choate displayed or threatened the

---

**3.** *State v. Hurt,* 931 S.W.2d 213 (Mo.App. 1996), points out that certain fundamental decisions in a criminal case repose with an accused ("whether or not to plead guilty, waive a jury, testify, or appeal"), but others are for the attorney alone, even without the advice or consultation of the client. *Id.* at 214.

**4.** Instruction No. A is set forth in this opinion in the same format as it was tendered to the trial court other than spacing. The copy of

the instruction that was tendered was double-spaced. Defendant marked the copy of Instruction No. A that he tendered with the original as patterned after MAI–CR 3d 304.04 and 323.02; however, paragraph fourth as set out in the instruction defendant tendered is not part of either of those pattern instructions. The marked copy of that instruction should have reflected that it was "modified." *See* Rule 28.02(b).

use of what appeared to be a deadly weapon,

and

Sixth, that Ricky Choate was a participant with defendant in the commission of the offense, then you are instructed the offense of robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt;

Seventh, that with the purpose of promoting or furthering the commission of that robbery in the first degree, the defendant acted together with or aided Ricky Choate in committing that offense,

then you will find the defendant guilty under Count I of robbery in the first-degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty under Count I of robbery in the first degree, you will assess and declare one of the following punishments.

1. Life imprisonment

2. Imprisonment for a term of years fixed by you, but not less than ten years and not to exceed thirty years.

Point I asserts that the trial court erred in refusing Instruction No. A because "it prevented the jury from considering [defendant's] defense that he believed the robbery was planned with the cooperation of the owner." The part of Instruction No. A to which Point I is directed is its paragraph fourth that would have required the jury to find "that defendant did not honestly believe that he had a right to take such property" in order to find him guilty. Defendant relies on § 570.070.1 in making this claim. It provides:

A person does not commit an offense under section 570.030 if, at the time of the appropriation, he

(1) Acted in the honest belief that he had the right to do so; or

(2) Acted in the honest belief that the owner, if present, would have consented to the appropriation.

Defendant's reliance on § 570.070.1 is misplaced. He disregards the language limiting that statute to the commission of "an offense under section 570.030." Section 570.030 addresses the offense of stealing.[5] Defendant was not charged with stealing. He was charged with and convicted of the offenses of robbery in the first degree and armed criminal action as identified in § 569.020 and § 571.015, respectively. Point I is denied.

Point II is directed to the trial court's refusal to admit an exhibit tendered by defendant, Defendant's Exhibit E.[6] Point II contends the trial court erred in limiting defendant's trial counsel's examination of Rick Fiedler about the exhibit and in refusing to admit it in evidence. Defendant argues the exhibit was relevant because "it tended to prove that Ricky Fiedler submitted third-party claims to the insurance company that exceeded the amount he later paid to those persons out of the insurance proceeds." Defendant suggests the exhibit and inquiry would have provided "evidence that Fiedler had a motive to join a conspiracy to defraud the insurance company"; that the evidence that was excluded "would have supported [defendant's] argument that there was in fact no robbery because Fiedler willingly relinquished the jewelry."

---

5. Defendant relies on, and quotes from, *State v. Quisenberry*, 639 S.W.2d 579 (Mo. banc 1982), for the proposition that the trial court should have given proposed Instruction No. A containing "the claim of right defense." Unlike this case, the offense in *Quisenberry* was stealing.

6. Defendant did not file the exhibits tendered or admitted in evidence at trial with this court, nor are the exhibits included in the legal file component of the record on appeal. Defendant's brief characterizes Defendant's Exhibit E as "a copy of the list of creditors on [Mr. Fiedler's] bankruptcy schedule."

Mr. Fiedler testified as a witness for the state in its case-in-chief. On cross-examination, defendant's trial attorney inquired about how insurance money paid as a consequence of the robbery had been distributed. Mr. Fiedler testified that the wholesale value of jewelry taken in the robbery was in excess of $200,000. He stated that some pieces of jewelry that were taken were items he had been holding for sale on consignment. He estimated the value of consignment property taken was approximately $150,000. He estimated that around $80,000 of his personal stock had been taken. He had $150,000 insurance coverage. His insurance carrier paid the face amount of the policy.

Mr. Fiedler was asked if all the people whose jewelry had been consigned to him had been compensated for their losses. He testified that some had not been paid. Some received partial payment. He was asked if it was fair to say that some people got about 70 percent of the value of their consignment jewelry with a promise from him that he would pay the remaining 30 percent. Mr. Fiedler said that was correct. He testified that he later filed for bankruptcy and asked to be discharged from those claims.

Mr. Fiedler was asked about the procedure followed in disbursing the insurance proceeds. He said the $150,000 had been placed in "a separate robbery account" at Empire Bank. He testified that there were bank records that would show how the money was disbursed; that there had been no request on behalf of defendant to look at those records. Mr. Fiedler told the court and jury he had not profited in any way from the robbery; that it had been financially devastating to him. At the end of Mr. Fiedler's testimony during the state's case-in-chief, defendant's attorney requested the trial court to remind him he was "under defense subpoena still."

Rick Fiedler was called as a witness for defendant. Before tendering his testimony, defendant's trial attorney told the trial judge the state might have a problem with one of the topics about which defendant wished to question Mr. Fiedler. Defendant's trial attorney told the judge he wanted Mr. Fiedler to "identify his creditor schedule from the bankruptcy and just introduce it." Defendant's attorney continued:

> And I also want him to identify the list that he prepared regarding things that were missing from his shop that were on consignment. And I want to offer that into evidence.
>
> I don't want to go into how much did you pay these people, when did you pay them, who got paid, who didn't get paid? I think that those two documents allow me to show the discrepancies in what he's saying he paid out.

The state objected to the proposed testimony defendant's attorney sought to elicit on the ground it was not relevant. Defendant's trial attorney told the trial court, "I want to use documents prepared by him and signed by him as accurate records...." The attorney suggested what he proposed was an alternative form of proof to the bank records Mr. Fiedler had testified about. The state objected further on the basis of best evidence, that "we don't have certified copies of these things." The trial judge stated the opinion that the proposed testimony on the subject would not be relevant; that the proposed exhibits violated the best evidence rule. Defendant was permitted to tender testimony of Mr. Fiedler as an offer of proof.

Mr. Fiedler testified, in the offer of proof, that he had attempted to complete a list of consignments that were missing after the robbery. He said the bankruptcy court had the list he prepared. He was shown what was represented as being "Defendant's Exhibit D" and asked if he recognized it. Mr. Fiedler answered, "Yes." He testified it was the list of consignments and repairs he made for the insurance company to use in making payments to customers. He was then shown what is referred to in the transcript as "a multiple-

page document marked Defendant's Exhibit E." Mr. Fiedler said it looked like part of the schedules from his bankruptcy case.

Defendant's attorney offered "Defendant's Exhibits D and E." The state objected explaining the objection was "for the, you know, at the trial, but for the purposes of this hearing I guess I don't objection [sic]." The trial judge stated the exhibits would be admitted "for the offer of proof only."

After further conversation between the trial attorneys and the trial judge, the judge announced he was ruling that Exhibit E was not admissible; that he was not excluding Exhibit D, but would wait to see how it was used.

Trial resumed and Mr. Fiedler testified as a witness called by defendant. During his inquiry, defendant's trial attorney asked Mr. Fiedler to identify Defendant's Exhibit D and tell what it was. Mr. Fiedler stated it was a list of people who had consignments in his store and repairs in the store; that it was, to the best of his knowledge, a list of items that were stolen. He explained it showed "the amount of money that their consignments were for or that their repairs were, basically assessed at replacement value." Mr. Fiedler testified that the consignors were paid 70 percent of the amounts on the schedule from the money that was available. He said he noted the balances owed and items recovered by the police on the schedule.

Defendant's Exhibit D was offered and admitted in evidence without objection. Additional questions were asked Mr. Fiedler. Defendant's Exhibit E was not mentioned in defendant's attorney's trial inquiry of Mr. Fiedler. It was not offered in evidence during the course of the trial.

The admissibility of Defendant's Exhibit E was addressed as if it were the subject of a motion in limine. The trial court conducted a hearing on its admissibility outside the presence of the jury after which the judge ruled the exhibit would

not be admitted. Arguably, failure to offer the exhibit in evidence during the course of the trial amounts to failure to preserve the question of its admissibility for appellate review.

■■■ "An order sustaining a motion in limine is an interlocutory order subject to change by the court when the subject matter of the order is presented to the court in proper perspective in the trial of the case." *Annin v. Bi–State Development Agency*, 657 S.W.2d 382, 385 (Mo.App. 1983). "[A]fter a denial of a motion in limine, an objection must be made at trial to preserve the point for appellate review." *Anderson v. Rojanasathit*, 714 S.W.2d 894, 895 (Mo.App.1986). *See also State v. Tatum*, 807 S.W.2d 126, 128 (Mo.App.1991). On the other hand, a somewhat similar situation to this was addressed by this court in *Pollock v. Searcy*, 816 S.W.2d 276 (Mo.App.1991). *Pollock* involved a trial court's erroneous prohibition of a request to ask "the insurance question" during voir dire in a personal injury action. A proceeding held immediately before trial commenced resulted in a declaration that the question could not be asked. Consequently, no attempt was made to ask the question during voir dire. This court granted appellate review concluding the circumstances differed from a motion in limine situation; that it would have been futile to seek permission to ask the question that had been ruled improper a short time earlier. *Id.* at 277.

Regardless, since State's Exhibit E was not filed with this court nor included in the legal file component of the record on appeal, *see* n. 6, *supra*, no further discussion is required. Rule 30.04(a) requires the record on appeal to contain all of the record, proceedings and evidence necessary for determination of all questions presented on appeal. It directs that the record on appeal be divided into two components, the transcript and legal file. The legal file is to include exact copies of the portions of the trial record previously reduced to written form. Rule 30.05 permits, by stipula-

tion of the parties, filing of original exhibits in the appellate court rather than their inclusion in the record on appeal. It directs, with respect to cases submitted without oral argument, as was this case, "If the case is taken under submission without oral argument, exhibits shall be filed with the clerk within five days after the case is taken under submission." This case was submitted November 1, 2000.

■■■■ "If a party wishes us to consider the relevancy or the admissibility of a proffered exhibit, it is his duty to furnish the exhibit to us before the cause is submitted [or in this instance within five days after it was submitted], so that we will have some factual basis for our determination." *State v. Simpson*, 779 S.W.2d 274, 283 (Mo.App.1989). Failure to provide the exhibit to which a claim of error is directed in the manner prescribed by Rule 30.05 results in the claimed error not having been properly preserved. Not having the exhibit that defendant contends should have been admitted in evidence prevents this court from ascertaining its content, hence its relevancy, and whether it is an original document or in such other form that would have permitted its admission in evidence. "We will not presume an error by the trial court the record does not affirmatively show." *State v. Hendrix*, 646 S.W.2d 830, 834 (Mo.App.1982). Point II is denied.

■■■■ Point III is directed to a claim that defendant was denied his right to a speedy trial. Defendant filed a motion to dismiss that asserted he had been denied a speedy trial. The trial court denied the motion. Point III contends this was error; that defendant was prejudiced by the delay that occurred between the time he was arrested and incarcerated and when the case was brought to trial.

On November 18, 1998, defendant filed a "Request For Speedy Trial." His motion asserted that he had been incarcerated awaiting trial since April 20, 1998; that he was ready for trial. He requested the court to grant him "a speedy trial by setting [his case] for a trial as soon as reasonably possible." On April 23, 1999, he filed a motion to dismiss for failure to provide a speedy trial. The trial court overruled the motion to dismiss that same day. Defendant's trial was held May 11—14, 1999.

Defendant argues he was prejudiced because "Ricky Choate, who admittedly recruited [defendant] for the robbery and was the source of his understanding that the robbery was staged, was unable to recall fully what he told [defendant] due to the passing of time."

The right to a speedy trial guarantees to a criminal defendant that the state will move fast enough to assure the defendant of the early and proper disposition of the charges against him. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468, 474 (1971). What is essential is orderly expedition and not mere speed. *Id.* This is because the Sixth Amendment right to a speedy trial does not only protect the defendant, it also protects society by keeping defendants from using long pretrial delays to their own advantage. Deprivation of the right to a speedy trial will not, therefore, prejudice the defendant per se. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d at 101, 112 (1972).

*State v. Loewe*, 756 S.W.2d 177, 181 (Mo. App.1988).

*State v. Davis*, 903 S.W.2d 930 (Mo.App. 1995), explains:

The Sixth Amendment guarantees a defendant the right to a speedy trial. *State v. Fleer*, 851 S.W.2d 582, 595 (Mo. App.1993). An instant or prompt trial is not guaranteed. *Id.* In deciding whether a defendant has been deprived of his speedy trial right, the Missouri Supreme Court adopted the method of analysis set forth by the United States Supreme Court in *Barker v. Wingo*, *[supra]*. *State v. Bolin*, 643 S.W.2d 806 (Mo.banc 1983). This analysis involves the balancing of four factors: (1) the length of the

delay; (2) the reason for the delay; (3) the defendant's assertion of the right to speedy trial; and (4) prejudice to the defendant. *State v. Raine*, 829 S.W.2d 506, 512 (Mo.App.1992). The application of these factors must be considered on a case-by-case basis. *Id.*

*Id.* at 936.

■ In considering the length of delay, eight months or longer is presumptively prejudicial. *State v. Farris*, 877 S.W.2d 657, 660 (Mo.App.1994). Defendant was arrested April 20, 1998. His case was tried in May 1999. The delay was presumptively prejudicial warranting review of the other factors considered in determining if defendant's right to a speedy trial was violated.

Both parties were responsible for some delays in this case.[7] There is no indication that any delay attributable to the state was deliberately intended to hamper the defense. Thus, no delay caused by the state is heavily weighed against it. *See State v. Davis, supra.* The reasons for the delay, overall, weigh against the state but not heavily.

Defendant filed a "Request For Speedy Trial" November 18, 1998, requesting the court to set "this cause for a trial as soon as reasonably possible." On April 23, 1999, he filed a motion to dismiss for failure to provide a speedy trial. Trial commenced May 11, 1999. That factor weighs against the state, although the lack of diligence with which defendant pursued the request negates it being heavily weighed against the state.

■ Whether defendant was prejudiced by any delay in going to trial is the most important factor in the speedy trial analysis. *Davis*, 903 S.W.2d at 937. "To require reversal, any claimed prejudice resulting from delay must be actual prejudice apparent on the record or by reason-

able inference." *State v. Darnell*, 858 S.W.2d 739, 746 (Mo.App.1993).

Defendant's argument that he was prejudiced by the delay in his case being tried is based on testimony of his accomplice, Ricky Choate. Near the end of Choate's examination, he was asked if he told defendant "it was an inside job." Choate answered, "I can't remember."

Defendant argues his defense was that based on what his accomplice, Ricky Choate, told him, he believed the owners of the store were involved in the robbery to get insurance money; that Choate was the only source of this evidence. He infers that had he been tried sooner, Choate's memory would have been fresh and Choate would have testified defendant had been told "it was an inside job."

There is no merit in defendant's claimed prejudice. Apart from the questionable efficacy of the claimed "defense," Ricky Choate testified earlier that he told defendant "it really wasn't supposed to be an armed robbery." Choate was asked at that time if he told defendant "it was an inside job." Choate's answer was, "Yes." No actual prejudice was shown. Point III is denied.

■ Defendant's remaining allegation of error, Point IV, asserts the trial court erred in denying a motion to suppress evidence he had directed to an audio tape and a video tape admitted in evidence; that the trial court erred in admitting that evidence over his objection at trial. Defendant claims the recordings constituted illegal searches.

The recordings to which Point IV is directed were made at a motel where Ricky Choate met defendant. Choate arranged for the meeting at the request of police officers. The police rented two rooms at a motel. They installed videotaping and sound recording equipment in one room that could be monitored from the

---

7. Defendant's actions included filing a motion for change of judge on January 8, 1999, that was granted January 29, 1999. The trial had been scheduled to begin February 1, 1999. After the case was transferred to a different judge it was set for trial May 10, 1999.

other room. Choate's and defendant's conversation was recorded. It was admitted in evidence at trial.

Defendant argues that because Ricky Choate was acting on behalf of the state, his "consent" to the recording of the conversation was a nullity that could not override defendant's expectation of privacy at the location of their meeting. That argument fails.

■ A person's expectation of privacy does not protect the person's poor judgment in revealing transgressions to his or her misconceived allies. *State v. Engleman*, 634 S.W.2d 466, 476 (Mo.1982). Here, as in *Engleman*, defendant's reliance was on Ricky Choate's confidentiality, not on the location where he chose to converse with him. The Fourth Amendment afforded defendant no protection under those circumstances. *Id.* Point IV is denied. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.